NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

04-1571, 05-1153

IP INNOVATION, L.L.C.,

Plaintiff-Appellant,

v.

ECOLLEGE.COM,

Defendant-Appellee,

and

DIGITALTHINK, INC.,

Defendant-Appellee,

and

DOCENT, INC.,

Defendant-Cross Appellant.

_____

DECIDED:  November 29, 2005

_____

Before NEWMAN, RADER, and DYK, <u>Circuit Judges</u>.

RADER, <u>Circuit Judge</u>.

On summary judgment, the United States District Court for the Southern District of Texas determined that the defendants did not infringe U.S. Patent No. 4,877,404 (the '404 patent).  Finding no reversible error, this court <u>affirms</u> the decision of the district court.

I.

On May 29, 2002, IP Innovation, the owner of the '404 patent, sued WebCT and Thomson Learning for infringement of the '404 patent. IP Innovation later amended its complaint to add six additional defendants. Five of the eight defendants eventually settled. Only eCollege.com, DigitalThink, and Docent (the defendants) continued to litigate the case against them.

Before trial, the district court granted summary judgment of non-infringement to the defendants because the accused products do not satisfy two limitations under the court's claim construction. See IP Innovation, L.L.C. v. WebCT, Inc., Civil Action No. H-02-2031 (S.D. Tex. Jul. 1, 2004) (Summary Judgment Order); IP Innovation, L.L.C. v. WebCT, Inc., Civil Action No. H-02-2031 (S.D. Tex. Jan. 12, 2004) (First Claim Construction Order); IP Innovation, L.L.C. v. WebCT, Inc., Civil Action No. H-02-2031 (S.D. Tex. Feb. 10, 2004) (Second Claim Construction Order); IP Innovation, L.L.C. v. WebCT, Inc., Civil Action No. H-02-2031 (S.D. Tex. Mar. 5, 2004) (Amended Claim Construction Order). The district court reached its claim construction after a Markman hearing and extensive briefing by the parties, though it provided no explanation in its orders for the meaning attributed to the claims.

After prevailing on summary judgment, the defendants unsuccessfully moved for attorney fees. IP Innovation, L.L.C. v. WebCt, Inc., Civil Action No. H-02-2031 (S.D. Tex. Oct. 4, 2004) (Order Denying Attorney Fees). IP Innovation appeals the grant of summary judgment of non-infringement. Docent cross

appeals the denial of attorney fees.  This court has jurisdiction under 28 U.S.C. § 1295(a)(1) (2000).

## II.

This court reviews a district court's grant or denial of summary judgment under the law of the regional circuit.  Chamberlain Group, Inc. v. Skylink Techs., Inc., 381 F.3d 1178, 1191 (Fed. Cir. 2004).  Under the law of the United States Court of Appeals for the Fifth Circuit, this court reviews the grant or denial of summary judgment without deference.  Condrey v. Suntrust Bank Of Georgia, --- F.3d ---, 2005 WL 2857452, at *4 (5th Cir. 2005) (citation omitted).

In an exceptional case, a court may award attorney fees.  See 35 U.S.C. § 285.  "Although the determination of whether a case is exceptional is a question of fact reviewed for clear error, this court reviews a district court's decision to award attorney fees in an exceptional case only for abuses of discretion."  Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1460 (Fed. Cir. 1998) (en banc).

This court reviews a district court's denial of a motion for sanctions under the law of the regional circuit.  See Nystrom v. Trex Co., 2005 WL 2218632 (Fed. Cir. 2005) (citation omitted).  The Fifth Circuit reviews the denial of a motion for sanctions for an abuse of discretion.  Test Masters Educ. Serv. Inc. v. Singh, --- F.3d ---, 2005 WL 2650945, at *16 (5th Cir. 2005) (citation omitted).

## III.

Infringement entails a two-step process: "First, the court determines the scope and meaning of the patent claims asserted . . . [and second,] the properly

04-1571, 05-1153                                        3

construed claims are compared to the allegedly infringing device." Cybor Corp., 138 F.3d at 1454 (citations omitted). "Step one, claim construction, is a question of law, that we review de novo. Step two, comparison of the claims to the accused device, is a question of fact, and requires a determination that every claim limitation or its equivalent be found in the accused device." N. Am. Container, Inc. v. Plastipak Packaging, Inc., 415 F.3d 1335, 1344 (Fed. Cir. 2005) (internal citations omitted).

In Phillips, this court explained: "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1115 (Fed. Cir. 2004)). Thus, this court's analysis begins with a review of the claim terms which "'are generally given their ordinary and customary meaning.'" Id. (quoting Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "The inquiry into how a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin claim interpretation." Id. "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." Id.

In the '404 patent, the parties dispute the district court's interpretation of two limitations: (1) embedded in a series of interrelated screens (the embedded limitation); and (2) operatively connected (the operatively connected limitation).

The embedded limitation appears in all three of the '404 patent's independent claims. Claim 1 is representative:

> 1. An interactive computer software system permitting a user to take a pre-selected computer course or access a pictorial data base, comprising:
>
> . . . .
>
> (c) a graphics computer sub-system operatively connected to said host computer sub-system, said graphics computer sub-system executing said course upon interrogation by said host computer sub-system wherein said course includes <u>a series of interrelated pictures</u> displayed by said graphics computer sub-system, said series of pictures defining a course responsive to input data from the user and interactively dialoguing with the user as the user progresses through said pre-selected course or data base; and
>
> (d) wherein said pre-selected computer course comprises a distributed program <u>embedded in said series of interrelated pictures</u>.

'404 patent, col. 8, l. 49-col. 9, l. 3 (emphasis added). The district concluded:

> In claims 1, 11, and 14 of the '404 Patent, "embedded in a series of interrelated screens" means:
>
> The patent covers a program whose graphic elements include their instructions in a *single file* for each screen with all of the control codes being *directly accessible* on the consumer screen.

<u>Amended Claim Construction Order</u>, slip op. at 1 (emphasis added).

The specification supports the district court's interpretation. Turning first to the background section, prior art systems suffered from a saving format that was unalterable during the use of the program. '404 patent, col. 1, ll. 11-15. Specifically, "[r]eferences to pictures [in prior art systems] are <u>embedded in the control program</u> along with all the other programming codes necessary to create a functional course." <u>Id.</u>, col. 1, ll. 40-43 (emphasis added). In contrast:

> The present invention inverts the normal construction of a course. <u>Where prior art systems embed picture references into a control program</u>, thus, producing a large executable file containing thousands of programming language command lines, <u>the present</u>

04-1571, 05-1153                5

> invention embeds the control commands necessary to run the course *into the graphic pictures the author and operator see*. These control commands are called microscripts, and may be visible or invisible graphical elements of the complete picture presented to the human operator.

Id., col. 1, ll. 51-60 (emphasis added). Thus, "the invention . . . execut[es] the distributed 'program' that is underlined embedded into the numerous pictures or screens, as opposed to the more universal 'compiled' program [of prior art systems]." Id., col. 5, ll. 45-50 (emphasis added). These pictures or screens may, in turn, be stored on a disk as individual ASCII coded files, though each picture file is to be totally self-contained such that modification of one does not affect the others. Id., col. 1, l. 68-col. 2, l. 3; col. 2, ll. 28-29.

Thus, the inventor specified that "the invention" requires an association of command codes with individual pictures or screens. Moreover the invention permits alteration of each picture or screen (e.g., by changing the associated command codes) without affecting the other pictures or screens. The district court properly articulated that the invention's *graphic elements* (i.e., pictures and screens) must include their own instructions, which allows independent modification of each graphic element.

In addition, the district court also properly determined that the instructions (i.e., command codes) for a given picture or screen must be stored in a single file. IP Innovation concedes that the specification only discloses a "single file" embodiment, see id., col. 1, l. 68-col. 2, l. 3, but argues against importing this limitation into the language of the claims. The '404 patent, however, repeatedly uses the phrase "the present invention" or "the invention of the present disclosure" in describing its inventive features (including the embedded

04-1571, 05-1153                          6

limitation), rather than the phrase "in the present embodiment" or "in one embodiment." <u>See</u>, <u>e.g.</u>, <u>id.</u>, col. 1, ll. 51-52; col. 2, ll. 16-20, 53-59, 62-64; col. 3, ll. 11, 45-47, 56-60; col. 5, ll. 47-50, 57-58; col. 7, ll. 17-25. In contrast, the '404 patent uses the term "embodiment" in reference to *non*-inventive features, such as the graphic monitor and memory components. <u>See</u>, <u>e.g.</u>, <u>id.</u>, col. 4, ll. 63-66. The only other reference to "embodiments" in the '404 patent is common boilerplate language that does not specifically address the inventive features in any detail. <u>Id.</u>, col. 4, ll. 17-28; col. 8, ll. 43-47.

Thus, the '404 patent does not disclose multiple embodiments having different implementations of the embedded limitation as suggested by IP Innovation. Rather, the 404 patent's narrow characterization of what "the invention" covers in reference to the embedded limitation supports a construction requiring location of all of the command codes for a given picture or screen within a single file.

Finally, the district court also properly determined that the command codes for a given picture or screen must be directly accessible from the computer screen. IP Innovation contends that this feature has absolutely no relation to the term "embedded." To the contrary, the '404 patent states: "[t]he microscript may be <u>embedded anywhere in the pixel pattern of the screen</u>." <u>Id.</u>, col. 2, ll. 30-31 (emphasis added). Embedding the microscript in the pixel pattern of the screen means that it must be directly accessible without reference to another file. In other words, a user need not access another file to obtain the command code when it is already present in the pixel pattern of the screen. This discussion in

the specification supports the district court's requirement that the code be directly assessable on the screen.

The prosecution history confirms the district court's interpretation. During prosecution, the '404 patent applicant amended the claims to incorporate the "embedded" limitation to traverse a prior art rejection. The applicant also included remarks that distinguished the claimed invention over prior art touch screen displays, which allegedly did not disclose the "MicroScript principle as disclosed and claimed by the Applicant[.]" Contrasting the claimed invention from these prior art displays, the '404 patent applicant explained: "[t]his invention visibly, physically, and electronically connects the button to its command, embodied as a MicroScript" by embedding the MicroScript code in each picture or screen. This explanation reaffirms the district court's construction requiring direct accessibility of the command code.

In brief, the district court properly construed the embedded limitation to mean providing graphical elements (i.e., individual pictures or screens) with corresponding instructions (i.e., command code) in a *single file* for each graphical element, such that all of the control codes for a given graphical element are *directly accessible* on the consumer screen. The narrow characterization of the invention in the specification and file wrapper do not permit IP Innovation's broader interpretation.

As to the operatively connected limitation, this limitation appears in two of the '404 patent's three independent claims. Claim 1 is representative:

1. An interactive computer software system permitting a user to take a pre-selected computer course or access a pictorial data base, comprising:

. . . .

(c) a graphics computer sub-system <u>operatively connected</u> to said host computer sub-system, said graphics computer sub-system executing said course upon interrogation by said host computer sub-system wherein said course includes a series of interrelated pictures displayed by said graphics computer sub-system, said series of pictures defining a course responsive to input data from the user and interactively dialoguing with the user as the user progresses through said pre-selected course or data base;

. . . .

'404 patent, col. 8, l. 49-col. 9, l. 3 (emphasis added). The district court construed the operatively connected limitation to mean "the graphics computer subsystem communicates with the host computer subsystem through an unmediated mechanism." <u>Amended Claim Construction Order</u>, slip op. at 1. To the contrary, the broad language "operatively connected" does not require communication through an unmediated mechanism.

Claims 1 and 11 use the phrase "operatively connected" to describe the communications that take place between a graphics computer sub-system and a host computer sub-system during operation. The claim language does not state or suggest, however, that these communications *must* be done on a non-mediated communication mechanism. While the specification does contemplate a non-mediated communication mechanism, <u>see</u> '404 patent, col. 4, ll. 58-59, the particular communication mechanism in any given system has nothing to do with the '404 patent's improvement over the prior art. In other words, the manner in which the host system and the graphics system communicate has no bearing on the modification of one picture or screen without affecting the other screens.

This feature was the '404 patent's key innovation as outlined in the specification and prosecution history. Thus, this court agrees with IP Innovation that the operatively connected limitation does not require communication over an unmediated communication mechanism.

Having determined the proper interpretation of the disputed claim limitations, the analysis shifts to an examination of the accused products. In all of the accused products, an HTML file for the first screen is downloaded and displayed when a user initiates the program. Once the first screen has been displayed, a user then selects a hyperlink to navigate to the next screen, which causes the browser to download an HTML file for the next screen and display that next screen for the user. These screens may be edited independently, without affecting the other screens. Accordingly, IP Innovation contends that these screens satisfy the embedded limitation as claimed. IP Innovation acknowledges, however, that a hyperlink itself is not the actual command code located in the HTML file, but submits a hyperlink is a graphical representation of the command code which can be made visible using a "right click" function that is analogous to the transcriber function disclosed in the '404 patent. See '404 patent, col. 7, l. 62-col. 8, l. 6.

Contrary to IP Innovation's contention, the transcriber function disclosed in the '404 patent has nothing in common with the right click function in the accused products. Rather, the disclosed transcriber function converts unreadable command code to a *human readable font.* Notably, the command code in the '404 patent is still "embedded" in the pixel format of the screen prior to

transcription, albeit in an unreadable format. '404 patent, col. 7, l. 58-col. 8, l. 15. In other words, the code is literally present on the screen but illegible (e.g., converted to hash marks or rendered in a color that matches the background color). In contrast, the command code in an HTML file is not physically present on the screen. Rather, HTML files direct a browser to retrieve various graphic files and arrange those graphic files in relation to text in generating a screen displayed for the user. The generated screen does not actually contain the HTML command codes themselves; instead, the generated screen is simply a picture created *based* on the command codes contained in the HTML file.

By way of analogy, a building does not contain its architectural blueprints "embedded" thereon. Rather, blueprints determine the location of various pieces to assemble the building, similar to the manner in which an HTML file is used to create a picture in the accused products. In contrast, IP Innovation's disclosed transcriber is analogous to a magnifying glass used to read the fine print at the bottom of a form contract – the text is physically "embedded" thereon, but is simply so small that it is invisible to the naked eye until "converted" or "transcribed" to a larger size. For at least this reason, the district court properly concluded that the accused products do not satisfy the embedded limitation, and thus properly granted summary judgment of no literal infringement.

In addition, the accused products do not satisfy the embedded limitation under the Doctrine of Equivalents (DOE). Rather, because the '404 patent applicant added the embedded limitation and argued this distinction in traversing the noted prior art rejection during prosecution, DOE coverage is unavailable.

See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 535 U.S. 722, 736 (2002) (narrowing amendment for purposes of patentability); Eagle Comtronics, Inc. v. Arrow Communication Labs., Inc., 305 F.3d 1303, 1316 (Fed. Cir. 2002) (argument-based estoppel); Elkay Mfg. Co. v. EBCO Mfg. Co., 192 F.3d 973, 979 (Fed. Cir. 1999) (argument-based estoppel). There has been no showing that any of the so-called Festo exceptions to prosecution history estoppel applies here. See Festo Corp., 535 U.S. at 740-41; Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 344 F.3d 1359, 1368 (Fed. Cir. 2003) (en banc). Thus, the district court properly granted summary judgment of non-infringement under the DOE as well.

Finally, because this court concludes the accused products do not satisfy the embedded limitation literally or under the DOE, this court need not address whether or not the accused products satisfy the operatively connected limitation. Therefore this court affirms the grant of summary judgment of non-infringement.

IV.

In Docent's cross appeal, Docent alleges the district court abused its discretion in denying its motion for attorney fees. Specifically, Docent argues that it presented the district court with substantial evidence demonstrating the baseless nature of IP Innovation's suit. Docent faults IP Innovation for not explaining the nature of its case or its infringement position after receiving Docent's source code. Essentially, Docent argues that IP Innovation should have stipulated to non-infringement rather than forcing the defendants to brief the

summary judgment issues. Docent accuses IP Innovation of being a patent "troll" that sought to exact a settlement to avoid litigation expenses.

Contrary to Docent's position, IP Innovation provided both the trial court and this court with a plausible infringement theory under the claim construction adopted by the district court and also under IP Innovation's proposed claim construction. While both courts rejected IP Innovation's theories, they were not so implausible as to suggest the district court abused its discretion in denying the attorney fee award. Moreover, five companies with products similar to the defendant's products took a license to the patented technology, which inferentially supports IP Innovation's argument that it had reasonable grounds upon which to initially bring suit against Docent. Thus, this record does not suggest that the district court abused its discretion in denying Docent's motion for attorney fees.

V.

In conclusion, because the district court properly determined that the accused products do not satisfy the embedded limitation, this court affirms the grant of summary judgment of non-infringement to the defendants. Additionally, because the district court did not abuse its discretion in denying Docent's motion for attorney fees, this court also affirms the denial of the fee award requested by Docent.