# United States Court of Appeals
# for the Federal Circuit

---

**ADVANCED STEEL RECOVERY, LLC,**
*Plaintiff-Appellant*

v.

**X-BODY EQUIPMENT, INC., JEWELL ATTACHMENTS, LLC,**
*Defendants-Appellees*

---

2014-1829

---

Appeal from the United States District Court for the Eastern District of California in No. 2:12-cv-01004-GEB-DAD, Judge Garland E. Burrell, Jr.

---

Decided: November 12, 2015

---

WAYNE M. BARSKY, Gibson, Dunn & Crutcher LLP, Los Angeles, CA, argued for plaintiff-appellant. Also represented by BLAINE H. EVANSON, JENNIFER RHO; CASEY JAMES MCCRACKEN, Irvine, CA; DANIEL M. CISLO, KELLY W. CUNNINGHAM, MARK D. NIELSEN, Cislo & Thomas LLP, Los Angeles, CA.

ROBERT M. HARKINS, JR., Locke Lord, LLP, San Francisco, CA, argued for defendants-appellees. Also represented by HUGH S. BALSAM, Chicago, IL.

---

Before PROST, *Chief Judge,* MOORE and STOLL, *Circuit Judges.*

STOLL, *Circuit Judge.*

Advanced Steel Recovery, LLC ("Advanced Steel") appeals the district court's summary judgment that X-Body Equipment, Inc. and Jewell Attachments, LLC (collectively, "X-Body") do not infringe the asserted claims of U.S. Patent No. 8,061,950 ("the '950 patent"). For the reasons below, we affirm as to both literal infringement and infringement under the doctrine of equivalents.

BACKGROUND

Advanced Steel owns by assignment the '950 patent, describing systems and methods of loading shipping containers with bulk material for storage or transport. Material is loaded into the top of a rectangular container packer, which is moved along a transfer base by a hydraulically powered piston-and-cylinder unit towards a shipping container. A second piston-and-cylinder unit then pushes the material out of the container packer and into the shipping container by a push blade. Figure 10 of the '950 patent shows a container packer system with the container packer depicted as extending partly into a shipping container.



FIG.10

Relevant to this appeal, the asserted claims of the '950 patent require that the first piston-and-cylinder unit (the "container packer piston-and-cylinder unit") be connected to the "transfer base *proximate end*" and the "container packer *proximate end*."   '950 patent col. 5 ll. 23–25 (emphases added).  Representative claim 1, with the disputed claim terms italicized for emphasis, recites the following:

1.  A container packing system, which comprises:

    a transfer base including proximate and distal ends and a container packer guide;

    a container packer including a *proximate end*, a distal end with an opening, opposite sidewalls, a floor and an interior;

    said container packer being movable longitudinally along said container packer guide between a retracted position on said transfer base and an extended position extending at least partially from said transfer base distal end;

    a container packer drive connected to said transfer base and said container packer and adapted for moving said container packer between its extended and retracted positions;

    a material transfer assembly mounted in said container packer interior and adapted for discharging bulk material through said container packer distal end opening;

    a material transfer assembly drive connected to said material transfer assembly and adapted for operating said material transfer assembly;

said material transfer assembly comprising a push blade assembly located in and affixed to said container packer and movable longitudinally between a retracted position in proximity to said *container packer proximate end* and an extended position in proximity to said container packer distal end;

said push blade assembly including a push blade extending transversely across said container packer interior;

said container packer drive comprising a container packer *piston-and-cylinder unit connected to said transfer base proximate end and said container packer proximate end*;

an hydraulic power source mounted on said transfer base and connected to said container packer piston-and-cylinder unit;

said material transfer assembly drive comprising a push blade assembly piston-and-cylinder unit connected to said hydraulic power source and adapted for extending and retracting said push blade assembly between an extended position distally beyond said transfer base distal end and a retracted position adjacent to said container packer proximate end within said container packer interior, said push blade assembly movement sequentially cooperating with said container packer movement whereby said push blade assembly is adapted for compacting bulk material in said container; and

> a transport container selectively located in proximity to said transfer base distal end and adapted for selectively receiving at least a portion of said container packer with said container packer in its extended position.

In the accused Acculoader device, which Jewell manufactures and X-Body sells, the container packer piston-and-cylinder unit is connected to the floor of the container packer, approximately 35% down its length. The claim construction dispute regarding the meaning of "proximate end" arose when X-Body moved for summary judgment of noninfringement, arguing that "the piston-and-cylinder[] for the [container packer] [of the Acculoader] [is] not connected to the proximate *end* of the [container packer] at all," but instead is connected "at a point on the bottom of the container packer far from the *proximate end*." *Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, No. 2:12-cv-1004-GEB-DAD, 2014 WL 3939356, at *3 (E.D. Cal. Aug. 11, 2014) ("*Summary Judgment Order*").

The district court determined that the '950 patent did not contemplate a particular definition of the term "proximate end" and that the ordinary meaning applies. The court then looked to a dictionary definition of "end" and construed the term as "the extreme or last part lengthwise." *Id.* at *4 (citing *Webster's Third New International Dictionary*, definition 1(c)(2) (1986)). In doing so, the court rejected Advanced Steel's broad construction of "proximate end" as "back half."

Turning to the infringement issue, the district court found that, in the Acculoader, the "connection point [of the container packer piston-and-cylinder unit to the container packer] is not at the proximate end." *Id.* As such, the court determined that "the Acculoader does not literally infringe the '950 patent." *Id.* On the doctrine of equivalents, the court determined that "[n]o reasonable

jury could find [the Acculoader's] connection point to be equivalent to the 'container packer proximate end.'" *Id.* at *5. Accordingly, the district court granted summary judgment of noninfringement to X-Body for both literal infringement and infringement under the doctrine of equivalents.

Advanced Steel timely appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

DISCUSSION

We review a district court's summary judgment decision under the law of the regional circuit, here the Ninth Circuit. *Halo Elecs., Inc. v. Pulse Elecs., Inc.,* 769 F.3d 1371, 1377 (Fed. Cir. 2014). The Ninth Circuit reviews the grant or denial of summary judgment de novo. *Humane Soc'y of U.S. v. Locke,* 626 F.3d 1040, 1047 (9th Cir. 2010). Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Determining infringement requires two steps: construing the claims and comparing the properly construed claims to the accused product. *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009). The "ultimate interpretation" of a claim term, as well as interpretations of "evidence intrinsic to the patent (the patent claims and specifications, along with the patent's prosecution history)," are legal conclusions, which this court reviews de novo. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015). Where a district court "make[s] factual findings about . . . extrinsic evidence[, however,] th[e] subsidiary factfinding must be reviewed for clear error on appeal." *Id.* "[T]he words of a claim are generally given their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (internal quotation marks omitted). To determine the scope and meaning of the asserted claims, we look to the words of

the claims themselves, the specification, the prosecution history, and if necessary, any relevant extrinsic evidence. *Id.* at 1315–17.

"Infringement, whether literal or under the doctrine of equivalents, is a question of fact." *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1129–30 (Fed. Cir. 2011). Summary judgment of noninfringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim is found in the accused device either literally or under the doctrine of equivalents. *PC Connector Sols. LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005).

## A. Claim Construction

On appeal, Advanced Steel faults the district court for too narrowly construing "proximate end" to mean the extreme or absolute edge of the container packer. Advanced Steel argues that the "proximate end" of the container packer should instead be construed as the "back half" or "the portion or region that is opposite the distal end." Appellant's Br. 13. But Advanced Steel mischaracterizes the district court's construction. The court did not actually construe "proximate end" as the "extreme edge," "absolute edge," or the like. Instead, the district court interpreted "proximate end" as "the extreme *or* last part lengthwise." *Summary Judgment Order* at *4 (emphasis added). The district court's use of the disjunctive "or" is most properly understood as meaning that the proximate end of the container packer includes not just the "extreme" end, but also the "last part." *See SkinMedica, Inc. v. Histogen Inc.*, 727 F.3d 1187, 1199 (Fed. Cir. 2013) (explaining that "or" "plainly designates" alternatives). Indeed, the court's cited examples of common use of the term "end," such as "the rear [end] of an automobile," support this understanding. *Summary Judgment Order* at *4.

As properly understood, the district court's construction is supported by the claims and specification. The specification does not expressly define "proximate end." Yet *every* figure that depicts the disputed connection shows the container packer piston-and-cylinder unit connected to the container packer at the container packer's extreme edge. *See, e.g.*, '950 patent Figs. 1, 2, 4, 5, 6, 10; *see also CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1153 (Fed. Cir. 1997) ("[P]atent drawings are highly relevant in construing the . . . limitations of the claims.").

The specification also depicts other "ends" as the structure's extreme edge. For example, the multi-stage insertion/extraction piston-and-cylinder unit (30) has a proximate end (28) and distal end (32), both of which are depicted in the figures as the extreme parts of the unit lengthwise. '950 patent col. 3 ll. 28–33, Figs. 2, 4. In addition, the description of the piston-and-cylinder proximate end (58) describes the anchor structure (62) as connected to the piston-and-cylinder proximate end (58), which is shown at the unit's extreme edge. *Id.* col. 3 l. 66 – col. 4 l. 2, Fig. 5. And the "ends" of the container packer itself (34, 36) are labeled as the extreme ends. *See id.* Figs. 5, 6, 7.

Advanced Steel advocates against the district court's construction by pointing to the connection of the piston-and-cylinder unit (30) to the transfer base (4) in Figure 2 to argue that the "proximate end" is shown as offset from the absolute edge by as much as 10%. Thus, according to Advanced Steel, the district court's construction excludes this preferred embodiment. We do not find this argument persuasive. The district court's construction, understood as "the extreme *or last part* lengthwise," allows for the connection point to be offset from the absolute edge. We find the district court's construction of "proximate end" to be consistent with the connection at the transfer base as depicted in Figure 2.



FIG. 2

Advanced Steel also points to alternative dictionary definitions to support its position that "proximate end" should be construed as "the portion or region that is opposite the distal end." Appellant's Reply Br. 13. For example, Advanced Steel cites dictionaries that define "end" as "the portion of an area or territory that lies at or by the termination and that often serves as a delimitation or boundary"; "the part of an area that lies at the boundary"; and a "part or place at or adjacent to an extremity." *Id.* at 27–28. These dictionaries, however, define "end" relative to the termination or extremity—i.e., at or near where the structure ceases to exist—and are consistent with the district court's construction. They certainly do not support Advanced Steel's broad construction, defining "end" as the back half or any portion or region opposite the other end. We thus agree with the district court's construction of "proximate end" as "the extreme or last part lengthwise."

### B. Literal Infringement

We affirm the district court's summary judgment of no literal infringement. It is undisputed that the container packer piston-and-cylinder unit in X-Body's Acculoader is connected to the bottom of the container packer, approximately 35% down its length. This connection is shown in the drawing below:



Appellees' Br. 24 (figure modified); *see also Summary Judgment Order* at *3.

"To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995). Here, the asserted claims are narrowly and specifically drawn, reciting "a container packer including *a proximate end*, a distal end with an opening, opposite sidewalls, *a floor*, and an interior." '950 patent col. 4 ll. 65–66 (emphases added). The claims thus define the "floor" of the container as being a separate element from the proximate end. Because the piston-and-cylinder unit in X-Body's Acculoader attaches to the floor, nearly 35% away from the extreme end, no reasonable jury could find that the Acculoader's piston-and-cylinder unit is connected to the container packer's proximate end. Thus, we affirm the district court's summary judgment of no literal infringement.

We note that, while the district court properly construed "proximate end" as the "extreme or last part lengthwise," its infringement analysis compared the accused device to the extreme end as opposed to the "extreme *or last part* lengthwise." *See Summary Judgment Order* at *4 ("The container packer piston-and-cylinder unit is connected to the Acculoader container packer 164.81 inches from the proximate end of the sidewalls of the container packer . . . ."). But "[w]e sit to review judgments, not opinions," *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1540 (Fed. Cir. 1983), and

we agree with the district court's ultimate determination that "this connection point [in the Acculoader] is not at the proximate end," as construed to mean "the extreme or last part lengthwise," *Summary Judgment Order* at \*4.

## C. Infringement Under the Doctrine of Equivalents

While infringement under the doctrine of equivalents is a question of fact, "[w]here the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n.8 (1997). "[A] patentee must . . . provide particularized testimony and linking argument as to the insubstantiality of the differences between the claimed invention and the accused device or process, or with respect to the function, way, result test when such evidence is presented to support a finding of infringement under the doctrine of equivalents." *AquaTex Indus., Inc. v. Techniche Sols.,* 479 F.3d 1320, 1328 (Fed. Cir. 2007) (second alteration in original) (emphasis omitted) (quoting *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996). Our case law also establishes that there are limitations to the doctrine of equivalents. "Whether the result of the All Limitations Rule, prosecution history estoppel, or the inherent narrowness of the claim language, many limitations warrant little, if any, range of equivalents." *Moore U.S.A., Inc. v. Standard Register Co.,* 229 F.3d 1091, 1106 (Fed. Cir. 2000) (internal citations omitted). "'Vitiation' is not an exception to the doctrine of equivalents, but instead a legal determination that 'the evidence is such that no reasonable jury could determine two elements to be equivalent.'" *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1356 (Fed. Cir. 2012) (quoting *Warner-Jenkinson*, 520 U.S. at 39 n.8).

To survive summary judgment of noninfringement under the doctrine of equivalents, Advanced Steel had to

present evidence of equivalence under each prong of the function-way-result test. *Augme Techs., Inc. v. Yahoo! Inc.*, 755 F.3d 1326, 1335–36 (Fed. Cir. 2014). "That a claimed invention and an accused device may perform substantially the same function and may achieve the same result will not make the latter an infringement under the doctrine of equivalents where it performs the function and achieves the result in a substantially differ-ent way." *Perkin-Elmer Corp. v. Westinghouse Elec. Corp.*, 822 F.2d 1528, 1532 n.6 (Fed. Cir. 1987). Here, Advanced Steel failed to meet its burden of showing that the Acculoader performs in substantially the same way as the claimed invention.

Advanced Steel's evidence on equivalence was submit-ted in the form of expert affidavits. In opining on the "way" prong of the function-way-result test, the expert stated that "there is no substantial difference between having a connection in the bottom middle and having a connection at the absolute back end" of the container packer because "in both cases, the Acculoader's container packer rides along horizontal guides, and the cylinder unit is hydraulically powered." J.A. 1492. But the fea-tures Advanced Steel's expert points to—the guides and hydraulically powered piston-and-cylinder unit—are just additional claim elements. '950 patent col. 5 ll. 1–2 ("container packer being movable longitudinally along said container packer guide"), ll. 28–30 ("an hydraulic power source . . . connected to said container packer piston-and-cylinder unit"). So his testimony, purporting to establish equivalence of "proximate end" with "floor," disregards the limitation at issue and merely points to satisfaction of *other* claim limitations.

A patentee, bearing the burden of showing equiva-lence, cannot merely point to other claim limitations to satisfy the doctrine of equivalents. Doing so runs afoul of the "all-elements rule" articulated in *Warner-Jenkinson*. *See* 520 U.S. at 40 ("A focus on individual elements and a

special vigilance against allowing the concept of equivalence to eliminate completely any such elements should reduce considerably the imprecision of whatever language is used."). Advanced Steel's attempt to establish that the Acculoader functions in substantially the same way as the claimed invention by reference only to other claim elements does not satisfy its burden on the doctrine of equivalents. *See also AquaTex Indus.,* 479 F.3d at 1328 ("Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice." (quoting *Texas Instruments*, 90 F.3d at 1567)).

It is undisputed that the Acculoader's piston-and-cylinder unit is connected to the floor of the container packer approximately 35% away from the extreme proximate end. While the term "proximate end" by no means precludes *some* offset from the absolute end, we find no error in the district court's conclusion that "no reasonable jury could find this connection point to be equivalent to the 'container packer proximate end.'" *Summary Judgment Order* at *5. In view of the evidence of equivalence presented here and the narrowness of the asserted claims, we find the range of equivalents does not extend to the connection point in the Acculoader. *See Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1382 (Fed. Cir. 2000) ("[T]he range of equivalents cannot be divorced from the scope of the claims."). To find otherwise would ignore the precise and specific structural limitations in the claims. We thus conclude that the district court did not err in granting summary judgment of noninfringement under the doctrine of equivalents.

Advanced Steel complains that the district court erred because it relied solely on vitiation to support its determination of noninfringement. But we review judgments, not opinions. *Stratoflex*, 713 F.2d at 1540. And as we have explained, "saying that a claim element would be vitiated is akin to saying that there is no equivalent to the claim

element in the accused device based on the well-established 'function-way-result' or 'insubstantial differences' tests." *Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1347 (Fed. Cir. 2013). Here, for the reasons discussed above, we agree with the district court's judgment that there is no equivalence based on the function-way-result test.

Because we affirm summary judgment of noninfringement, we do not reach X-Body's alternative arguments for affirmance.

## CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment that X-Body does not infringe the asserted claims of the '950 patent literally or under the doctrine of equivalents.

## **AFFIRMED**