NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SANDBOX LOGISTICS LLC, OREN TECHNOLOGIES, LLC,**
*Plaintiffs-Appellants*

**v.**

**PROPPANT EXPRESS INVESTMENTS LLC, PROPPANT EXPRESS SOLUTIONS LLC,**
*Defendants-Appellees*

---

2019-1684

---

Appeal from the United States District Court for the Southern District of Texas in No. 4:17-cv-00589, United States District Judge George C. Hanks, Jr.

---

Decided: May 18, 2020

---

JOHN C. O'QUINN, Kirkland & Ellis LLP, Washington, DC, for plaintiffs-appellants. Also represented by CALVIN ALEXANDER SHANK, JASON M. WILCOX; GIANNI CUTRI, Chicago, IL.

JONATHAN S. FRANKLIN, Norton Rose Fulbright US LLP, Washington, DC, for defendants-appellees. Also represented by STEPHANIE DEBROW, Austin, TX; MARK

FRANCIS EBERHARD, CHARLES BRUCE WALKER, JR., Houston, TX.

———————————

Before LOURIE, WALLACH, and HUGHES, *Circuit Judges*.

WALLACH, *Circuit Judge*.

Appellants SandBox Logistics LLC and Oren Technologies, LLC (together, "SandBox") sued Appellees Proppant Express Investments LLC and Proppant Express Solutions LLC (together, "PropX") in the U.S. District Court for the Southern District of Texas ("District Court") alleging infringement of claims 2 and 13 of U.S. Patent No. 9,296,518 ("the '518 patent"), claims 6 and 17 of U.S. Patent No. 9,403,626 ("the '626 patent"), claims 1, 3, 7, 8, 16, 18, 19, and 21–23 of U.S. Patent No. 9,440,785 ("the '785 patent"), and claims 4 and 7 of U.S. Patent No. 9,511,929 ("the '929 patent") (collectively, "the Asserted Claims").[1]  After a *Markman* hearing, the District Court issued an opinion, construing the parties' disputed claim terms.  *See Sandbox Logistics LLC v. Grit Energy Sols. LLC*, Nos. 3:16-CV-12, 4:17-CV-589, 2018 WL 3344773, at *2–17 (S.D. Tex. July 9, 2018) (Opinion).  Thereafter, SandBox and PropX stipulated to non-infringement of the Asserted Claims by PropX's accused products ("the Accused Products"), and the District Court entered a final judgment in favor of PropX.  *See* J.A. 1–4 (Final Judgment).

SandBox appeals.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).  We affirm.

———————————

[1]    SandBox also sued Liberty Oilfield Services LLC, J.A. 115, which is not a party to this appeal.

## BACKGROUND

### I. The '518, '626, and '929 Patents

Entitled "Proppant Storage Vessel and Assembly Thereof," the '518, '626, and '929 patents share a common specification that "relates to storage containers" for proppant and "[m]ore particularly, . . . to storage container assemblies whereby a product in one container can flow to an interior volume of a lower container." '518 patent col. 1 ll. 34–37.[2] The '518, '626, and '929 patents explain that "[p]roppant is a material, such as grains of sand, ceramic, or other particulates" used during hydraulic fracturing (or "fracking") to "prevent . . . fractures from closing[.]" *Id.* col. 1 ll. 53–54.[3] The '518, '626, and '929 patents disclose "a proppant storage vessel . . . compris[ing] a container having a first end wall, a second end wall, a first side wall[,] and a second side wall." *Id.* col. 3 ll. 20–22; *see id.* col. 4 l. 48 ("Each of the containers is [an] ocean freight container."). "The container also has a top wall and a bottom wall" and "[a] hatch . . . formed on the bottom wall" which "is movable between an open position and a closed position." *Id.* col. 3 ll. 22–26. An "inclined surface" extends from each wall to the bottom hatch, *id.* col. 3 ll. 26–32, "to assure that the proppant contained within the [container] is suitably funneled toward the bottom hatch[,]" *id.* col. 7 ll. 18–21. The container may include "support brace[s]" to "structurally enhance the strength of the container . . . so as to . . . withstand the weight of the proppant that is

---

[2]    Because the '518, '626, and '929 patents share a common specification, we cite to only the '518 patent for ease of reference, unless otherwise specified.

[3]    "Hydraulic fracturing is the propagation of fractions in a rock layer caused by the presence of pressurized fluid[,] . . . made in order to release petroleum, natural gas, coal seam gas, or other substances for extraction." '518 patent col. 1 ll. 36–41.

contained therein." *Id.* col. 7 ll. 24–44. The '518, '626, and '929 patents disclose that the containers may be "vertically aligned in a stacked orientation[,]" *id.* col. 6 l. 65, so that proppant "in one container can flow to an interior volume of a lower container[,]" *id.* col. 1 ll. 36–37, and ultimately onto a "portable conveyer . . . placed below the bottom hatch" of the lowermost container, *id.* col. 6 ll. 7–8; *see id.* col. 4 ll. 2–6 ("The bottom hatch of the second container is aligned with the opening of the first container such that a proppant in the first container can flow through the [bottom] hatch thereof into the interior volume of the first container."); *see also id.*, Figs. 1, 2.

## II. The '785 Patent

Entitled "Method of Delivering, Storing, Unloading, and Using Proppant at a Well Site," the '785 patent "relates to storage containers" and "[m]ore particularly, . . . to proppant discharge systems wherein proppant can be discharged from the storage container. Additionally, the ['785 patent] relates to a process for providing proppant to a well site by the transport and delivery of the proppant containers." '785 patent col. 1 ll. 16–21. The '785 patent discloses "a container for the transport and storage of proppant . . . compris[ing] a box having a bottom, a pair of side walls[,] a pair of end walls[,] and a top." *Id.* col. 7 ll. 53–55; *see id.* col. 10 ll. 32–36 ("[T]he container . . . is a ten-foot [International Organization for Standardization] container."). An "inlet [is] formed at or adjacent to the top" of the box and an "outlet" is formed "at the bottom." *Id.* col. 7 ll. 56–57. A "ramp" extends from each wall to the outlet, *id.* col. 7 ll. 60–64, and "serve[s] to funnel[] the proppant that is retained within . . . the container . . . toward the outlet[,]" *id.* col. 10 ll. 44–46. The container also includes an "exterior frame" that "provides structural support for the container . . . and generally surrounds the exterior of the container" with "a plurality of vertical bars that extend so as to form a cage-like configuration around the walls[.]" *Id.* col. 9 l. 64, col. 10 ll. 15–20; *see id.*, Figs. 1, 2.

### III. Procedural History

In February 2017, SandBox sued PropX in the District Court, alleging infringement of the Asserted Claims. J.A. 115. In March 2018, the District Court held a *Markman* hearing. J.A. 125–26. In July 2018, the District Court issued its Opinion, construing, among other terms, "[t]he term 'bottom' in the '518, '626, and '929 patents[,]" *Sandbox Logistics*, 2018 WL 3344773, at \*4, and "[t]he term 'structural support members' in the [']785 patent[,]" *id.* at \*15.[4] Thereafter, SandBox and PropX stipulated to non-infringement of the Asserted Claims by the Accused Products and the District Court entered the Final Judgment in favor of PropX. *See* J.A. 1–4.

### DISCUSSION

### I. Standard of Review and Legal Standard

"The proper construction of a patent's claims is an issue of Federal Circuit law[.]" *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1228 (Fed. Cir. 2011) (citation omitted). "[C]laim construction must begin with the words of the claims themselves." *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 457 F.3d 1293, 1301 (Fed. Cir. 2006) (citation omitted). "[W]ords of a claim are generally given their ordinary and customary meaning," which is "the meaning

---

[4]    The District Court also construed other terms that SandBox raises on appeal. *See Sandbox Logistics*, 2018 WL 3344773, at \*2–6 (construing the terms "adjacent" and "top" of the '626 and '929 patents), \*8–10 (construing the term "support braces" of the '518, '626, and '929 patents and the term "structural supports" of the '626 and '929 patents); *see also* Appellant's Br. 15. We need not address the District Court's construction of these other terms, however, as we may resolve the issues on appeal by addressing the terms "bottom" and "structural support members" alone. *See infra* notes 11, 12.

that the term would have to a person of ordinary skill in the art [('PHOSITA')] in question at the time of the invention[.]" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc) (internal quotation marks and citations omitted). "The words used in the claims are interpreted in light of the intrinsic evidence of record, including the written description, the drawings, and the prosecution history[.]" *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002) (citation omitted). The PHOSITA "is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313.[5] The prosecution history may also be looked to in order to supply additional evidence of a claim term's intended meaning. *See Home Diagnostics, Inc. v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004).[6] While courts may also consider extrinsic evidence in claim construction, "such evidence is generally of less significance than the intrinsic record." *Wi-LAN, Inc. v. Apple Inc.*, 811 F.3d 455, 462 (Fed. Cir. 2016) (citation omitted).[7] "[T]he ultimate construction of a claim term is a legal question reviewed de novo, [while] underlying factual determinations made by the district court are reviewed for clear error." *Enzo Biochem Inc. v. Applera*

---

[5]    The specification "includes both the written description and the claims" of a patent. *In re Packard*, 751 F.3d 1307, 1320 n.11 (Fed. Cir. 2014).

[6]    A patent's prosecution history "consists of the complete record of the proceedings before the [U.S. Patent and Trademark Office ('USPTO')]," providing "evidence of how the [US]PTO and the inventor understood the patent." *Phillips*, 415 F.3d at 1317 (citation omitted).

[7]    "[E]xtrinsic evidence . . . consists of all evidence external to the patent and prosecution history[.]" *Phillips*, 415 F.3d at 1317 (internal quotation marks and citation omitted).

*Corp.*, 780 F.3d 1149, 1153 (Fed. Cir. 2015) (citation omitted).

### II. The District Court Properly Construed the Term "Bottom" as Recited in the '518, '626, and '929 Patents

The District Court concluded that a PHOSITA would understand the "term 'bottom' in the '518, '626, and '929 patents . . . to mean 'bottom wall[.]'" *Sandbox Logistics*, 2018 WL 3344773, at *4. Specifically, the District Court "conclude[d] from its review of the specification and prosecution history that a [PHOSITA] would understand that the [containers] used to construct the temporary proppant storage facility are modified standard intermodal shipping containers, which have . . . bottom walls." *Id.* at *6. Thus, the District Court "conclude[d] that a [PHOSITA] would understand the term[] 'bottom' . . . to mean 'bottom wall[.]'" *Id.* SandBox contends, however, that the District Court's construction "must be set aside" as "[i]ts rationale . . . relied entirely on its erroneous understanding that the claims require an 'ocean freight container' and on continuing to read in limitations from the specification." Appellant's Br. 68. We disagree with SandBox.

The District Court properly construed the term "bottom" as recited in the '518, '626, and '929 patents. Consistent with claim construction principles, we look first to the language of the Asserted Claims, followed by the language of the specification and prosecution history. *See Phillips*, 415 F.3d at 1314–17. Independent claim 1 of the '518 patent, from which asserted claims 2 and 13 depend, recites, in relevant part, "a container comprising[:] a cavity; sidewalls that define a lateral periphery of the cavity; . . . inclined surfaces that define a lower periphery of the cavity . . . ; a bottom; . . . [and] a hatch positioned closely adjacent to the bottom[.]" '518 patent col. 8 l. 57– col. 9 l. 3. Similarly, independent claim 1 of the '626 patent, from which asserted claim 6 depends, recites a "container comprising: a top; a bottom, having an outlet formed

therein; sidewalls coupled to the top and bottom, so as to define an interior volume of the container . . . ; and a hatch positioned proximate the outlet[.]" '626 patent col. 8 l. 64–col. 9 l. 25.  Independent claim 13 of the '626 patent, from which asserted claim 17 depends, likewise recites a "first container having . . . a first outlet in a first bottom" and a "second container . . . having a second outlet in a second bottom[.]"  *Id.* col. 11 ll. 4–7, 13–17.  Finally, independent claim 1 of the '929 patent, from which asserted claim 4 depends, and independent claim 7 of the '929 patent, both recite, in relevant part, limitations materially identical to those recited in the '626 patent.  *See* '929 patent col. 9 ll. 14–45, col. 10 ll. 1–52.

While the claims do not shed much light on the appropriate construction of "bottom," the claims invariably require that the "bottom" has an "outlet" or "hatch" formed therein.  Additionally, the juxtaposition of the terms "bottom" and "side*walls*" throughout the claims indicates that "bottom" may refer to something other than a wall.  *See Phillips*, 415 F.3d at 1314 ("Differences among claims can . . . be a useful guide in understanding the meaning of particular claim terms."); *cf. Fuji Photo Film Co. v. Int'l Trade Comm'n*, 386 F.3d 1095, 1104–05 (Fed. Cir. 2004) ("The fact that . . . [a] limitation was included in the first step and omitted from the second and third steps provides strong textual support for [the] argument that the claim should be construed to distinguish between the first step and the other two.").  Thus, while not dispositive, the claims seem to suggest that "bottom" may refer to a group of structures other than walls alone.

Turning to the broader specification, *see Trs. of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1363 (Fed. Cir. 2016) ("[T]he specification is always highly relevant to the claim construction analysis and is, in fact, the single best guide to the meaning of a disputed term." (internal quotation marks, emphasis, and citation omitted)), the '518, '626, and '929 patents disclose three embodiments of

the "present invention" each of which explicitly requires containers with a "bottom *wall*": (1) "[t]he present invention is a proppant storage vessel that comprises a container having a first end wall, a second end wall, a first side wall[,] and a second side wall" as well as "a top wall and a bottom wall which serve to define an interior volume therein[,]" '518 patent col. 3 ll. 20–24; (2) "[t]he present invention is also a proppant storage assembly that comprises a first container" that "has a bottom wall [with] a bottom hatch affixed thereto" and a "second container" that "has [a] bottom hatch formed on a bottom wall thereof[,]" *id.* col. 3 l. 62–col. 4 l. 2; and (3) "[i]n an alternative embodiment of the present invention, the first container has the first side wall, a second side wall, a first end wall[,] and second end wall hingedly mounted to the bottom wall thereof[,]" *id.* col. 4 ll. 49–52; *see id.*, Abstract ("A proppant storage vessel has a container having . . . a bottom wall."). Thus, the specification makes clear that the invention of the '518, '626, and '929 patents includes a "bottom wall." *See Poly-Am., L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1136 (Fed. Cir. 2016) ("While disavowal must be clear and unequivocal, it need not be explicit. For example, an inventor may disavow claims lacking a particular feature when the specification describes 'the present invention' as having that feature." (internal citations omitted)).[8]    Indeed, each

---

[8]    While the '518, '626, and '929 patents provide that the embodiments of the "present invention" are "not intended, in any way, to limit the scope of the present invention[,]" '518 col. 4 ll. 55–60; *see id.* col. 8 ll. 48–53 ("The foregoing disclosure and description of the invention is illustrative and explanatory thereof."), such boilerplate language, without more, is not sufficient to overcome the explicit description of the "present invention," *see D Three Enters., LLC v. SunModo Corp.*, 890 F.3d 1042, 1051 (Fed. Cir. 2018) ("[B]oilerplate language at the end of the . . . specification is not sufficient to show adequate disclosure

embodiment disclosed in the '518, '626, and '929 patents
includes a "bottom wall." *See* '518 patent col. 5 ll. 18–24
("[T]he preferred embodiment of the present invention . . .
includes a first container . . . having . . . a bottom wall[.]"),
col. 8 ll. 18–23 ("[A]n alternative embodiment of the con-
tainer . . . of the present invention . . . includes . . . end
walls . . . and . . . side walls . . . extending upwardly from a
bottom wall[.]").  Thus, while the claims may suggest that
"bottom" refers to something other than a wall, the broader
specification makes clear that "bottom" refers to a "bottom
wall." *Cf. Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d
1322, 1332 (Fed. Cir. 2009) ("[C]laim differentiation is a
rule of thumb that does not trump the clear import of the
specification.").[9]

The prosecution history supports the conclusion that
"bottom" refers to a "bottom wall."  During prosecution of
the '518 patent, an examiner twice rejected claims for
"omitting essential elements[,]" viz., "[t]he bottom wall on

---

of the actual combinations and attachments used in the . . .
[c]laims."); *see also IP Innovation, L.L.C. v. Ecollege.com*,
156 F. App'x 317, 321 (Fed. Cir. 2005) (explaining that
"common boiler plate" language did not effectively disclose
an alternative embodiment to support a broader construc-
tion of the claims at issue than the embodiment described
in the specification as the "present invention").

[9]    Moreover, were the "bottom" something other than
a wall as SandBox argues, e.g., "a mesh, an open frame, or
some other structure[,]" Appellant's Br. 69, the "bottom"—
against which "[t]he bottom hatch resides . . . when in the
closed position[,]" '518 patent col. 3 ll. 59–61—would allow
proppant to escape the container, *see Medrad, Inc. v. MRI
Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("It
is . . . entirely proper to consider the functions of an inven-
tion in seeking to determine the meaning of particular
claim language.").

which the hatch is mounted." J.A. 1007 (March 2015 Office Action), 1063 (November 2014 Office Action) (the Examiner explaining that "[t]he only hatches disclosed are positioned on a flat bottom wall").[10]  As the Examiner explained, he "considered [the bottom wall] essential because the specification does not describe a means to connect the hatch to the container without the bottom wall." J.A. 1007.  Sandbox did not challenge the Examiner's understanding; instead, in response, SandBox amended the claims of the '518 patent to recite a "bottom[,]" J.A. 575, with SandBox explaining that although the claims "were rejected on the basis [that] they lack essential elements[,]" the claims were "being amended to include a bottom, and that the hatch is positioned closely adjacent to the bottom[,]" J.A. 580.  The Examiner allowed the '518 patent, based at least in part on his understanding that the claims of the '518 patent were amended to include a "bottom wall on which the hatch is mounted." J.A. 1007; *see* J.A. 1025 (Notice of Allowability) (the Examiner explaining that the prior art "fails to teach or suggest . . . a bottom[] and a hatch closely adjacent to the bottom").  SandBox's failure to challenge the Examiner's understanding amounts to a disclaimer. *See Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1096 (Fed. Cir. 2013) ("If an applicant chooses, she can challenge an

---

[10]   The prosecution history of the '518 patent is relevant to the scope of the '626 and '929 patents, which matured from continuation applications of the '518 patent. *See* '626 patent, Front Page; '929 patent, Front Page; *see also Augustine Med., Inc. v. Gaymar Indus., Inc.*, 181 F.3d 1291, 1300 (Fed. Cir. 1999) ("[T]he prosecution history of a parent application may limit the scope of a later application using the same claim term[.]"); *Jonsson v. Stanley Works*, 903 F.2d 812, 818 (Fed. Cir. 1990) (explaining that the prosecution history of a parent application is relevant to understanding the scope of claims issuing in a continuation application).

examiner's characterization in order to avoid any chance for disclaimer, but the applicants in this case did not directly challenge the examiner's characterization."); *Tor-Pharm, Inc. v. Ranbaxy Pharm., Inc.*, 336 F.3d 1322, 1330 (Fed. Cir. 2003) ("[I]n ascertaining the scope of an issued patent, the public is entitled to equate an inventor's acquiescence to the examiner's narrow view of patentable subject matter with abandonment of the rest.   Such acquiescence may be found where the patentee narrows his or her claims by amendment[.]" (internal citation omitted)). Thus, the prosecution history confirms that "bottom" refers to a "bottom wall."  Accordingly, the District Court properly construed the term "bottom" as recited in the '518, '626, and '929 patents.[11]

---

[11]   Because every asserted claim of the '518, '626, and '929 patents requires a "bottom[,]" *see* '518 patent col. 8 l. 67 (independent claim 1, from which asserted claims 2 and 13 depend); '626 patent col. 8 l. 67 (independent claim 1, from which asserted claim 6 depends), col. 11 ll. 6–7, 17 (independent claim 13, from which asserted claim 17 depends); '929 patent col. 9 l. 18 (independent claim 1, from which asserted claim 4 depends), col. 10 ll. 6, 28 (asserted independent claim 7), and because SandBox stipulated that the "Accused Products do not have a 'bottom wall' as . . . is required by the term 'bottom[,]'" J.A. 2, we need not consider SandBox's remaining arguments as to the District Court's construction of other terms of the '518, '626, and '929 patents to affirm the District Court's Final Judgment of non-infringement as to those patents, *see Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1321 (Fed. Cir. 2015) ("Because we affirm [the district court's determination of] noninfringement, we do not reach [the defendant]'s alternative arguments for affirmance.").

### III. The District Court Properly Construed the Term "Structural Support Members" as Recited in the '785 Patent

The District Court concluded that a PHOSITA "would understand the term 'structural support members' to refer to structural fortifications to the end walls and sidewalls of an existing ocean freight container that are placed between the container's end frame members[.]" *Sandbox Logistics*, 2018 WL 3344773, at *15. SandBox contends, however, that "nothing about the term 'structural support members' requires that the claims' containers be 'ocean freight containers.'" Appellant's Br. 53. Additionally, SandBox argues that "'structural support members' does not refer solely to 'structural fortifications to the end walls and sidewalls' of a container, much less require adding supports to an existing ocean freight container." *Id.* at 54. Rather, "the plain and ordinary meaning of 'structural support members' includes features in or of the wall itself[, ]e.g., a corrugated surface[]." *Id.* (emphasis omitted). We disagree with SandBox.

The District Court properly construed the term "structural support members" as recited in the '785 patent as "structural fortifications" provided on an "existing" container. Turning first to the language of the Asserted Claims, *see Phillips*, 415 F.3d at 1314, independent claim 1 of the '785 patent, from which asserted claims 3, 7, and 8 depend, recites, in relevant part, "a plurality of proppant containers . . . each . . . having a closed and substantially rectangular upper proppant containing portion," as well as "a pair of vertically-extending end walls and a pair of vertically-extending side walls defining the closed and substantially rectangular upper proppant containing portion," and "a frame including a plurality of structural support members positioned to span the end walls and the sidewalls between end frame members to enhance support of the end walls and the side walls when the proppant container is full of fracking proppant[.]" '785 patent col. 14

l. 65–col. 15 l. 31.  Independent claim 16 of the '785 patent, from which asserted claims 18, 19, and 21–23 depend, recites materially identical limitations.  *See id.* col. 18 ll. 27–64.  That the "structural support members" are recited separately from the "end walls" and "side walls" implies that the "structural support members" are a structurally distinct component.  *See Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010) ("Where a claim lists elements separately, the clear implication of the claim language is that those elements are distinct components of the patented invention." (internal quotation marks, alteration, and citation omitted)); *see HTC Corp. v. Cellular Commc'ns Equip., LLC*, 701 F. App'x 978, 982 (Fed. Cir. 2017) ("The strongest evidence for this separation is the claim language itself, which plainly recites two different structures . . . .  The separate naming of two structures in the claim strongly implies that the named entities are not one and the same structure.").  Thus, the claim language supports the District Court's construction.

Turning to the broader specification, *see Trs. of Columbia Univ.*, 811 F.3d at 1363, the '785 patent discloses that a "frame . . . provides structural support for the container . . . and generally surrounds the exterior of the container.  The frame is formed of a plurality of vertical bars that extend so as to form a cage-like configuration around the walls[.]" '785 col. 10 ll. 15–19.  As shown in Figures 1 and 2 of the '785 patent, the "vertical bars," i.e., "structural support members," of the disclosed frame are depicted as separate and distinct components vis-à-vis the walls, even extending beyond the walls to the bottom of the container.  *Id.*, Figs. 1 and 2.  Indeed, each embodiment disclosed in the '785 patent includes this configuration.  Thus, as with independent claims 1 and 16, the broader specification supports the District Court's construction.

Finally, during prosecution of the '785 patent, SandBox disclaimed the construction it now proposes, and limited the "structural support members" to a separate and

distinct component.  Specifically, in response to an obvious-ness rejection over prior art, including U.S. Publication No. 2013/0206415 ("Sheesley"), SandBox distinguished Sheesley by arguing that the "container . . . [of Sheesley] is formed from corrugated metal" in which "the corrugated metal structure is an integral part of the sidewalls used to form the structure of the container . . . .  As such, the side-walls do not include separate, distinct support members as recited by [the] independent [c]laims[.]"  J.A. 1268–69; *see* J.A. 1269 ("As shown in F[ig]. 9, the sidewalls are stand-alone components of the container . . . without any addi-tional support members attached thereto.").  This is incon-sistent with SandBox's position on appeal, viz., that the same claim language "broadly encompasses fortifications made in the walls themselves, such as internal folds or cor-rugations that add strength."  Appellant's Br. 3.  SandBox clearly disavowed this subject matter, and cannot be al-lowed to recapture it.  *See Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003) ("The doctrine of prosecution disclaimer . . . preclud[es] patentees from re-capturing through claim interpretation specific meanings disclaimed during prosecution."); *see also Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1360 (Fed. Cir. 2017) ("Ul-timately, the doctrine of prosecution disclaimer ensures that claims are not construed one way in order to obtain their allowance and in a different way against accused in-fringers." (internal quotation marks and citation omitted)).  Accordingly, the District Court properly construed the term "structural support members" as recited in the '785 patent as "structural fortifications" provided on an "exist-ing" container.[12]

---

[12]    Because SandBox "limit[ed] their infringement al-legation pertaining to the term 'structural support mem-bers' in the '785 patent to the horizontal corrugations in the walls of the Accused Products," J.A. 3, and because

CONCLUSION

We have considered SandBox's remaining arguments and find them unpersuasive.  Accordingly, the Final Judgment of the U.S. District Court for the Southern District of Texas is

**AFFIRMED**

---

"structural support members" cannot include "corrugations in . . . walls" based on SandBox's representations during prosecution of the '785 patent, we need not consider Sand-Box's remaining arguments as to the District Court's construction of other terms of the '785 patent to affirm the District Court's Final Judgment of non-infringement as to that patent, *see Advanced Steel*, 808 F.3d at 1321.