United States Court of Appeals for the Federal Circuit

 03-1016,-1488

 FUJI PHOTO FILM CO., LTD.,

 Appellant,

 v.

 INTERNATIONAL TRADE COMMISSION,

 Appellee,

 and

 ACHIEVER INDUSTRIES, LTD.,

 Intervenor.

 Lawrence Rosenthal, Stroock & Stroock & Lavan LLP, of New York, New York, argued for
appellant. With him on the brief were Matthew W. Siegal, Lisa A. Jakob, Angie M. Hankins and Howard
D. Shatz.

 Jean H. Jackson, Attorney, Office of the General Counsel, U.S. International Trade Commission,
of Washington, DC, argued for appellee. With her on the brief were Lyn M. Schlitt, General Counsel;
and James M. Lyons, Deputy General Counsel.

 Joseph W. Bain, Akerman Senterfitt, of West Palm Beach, Florida, argued for intervenor.

Appealed from: United States International Trade Commission

 United States Court of Appeals for the Federal Circuit

 03-1016,-1488

 FUJI PHOTO FILM CO., LTD.,

 Appellant,

 v.

 INTERNATIONAL TRADE COMMISSION,

 Appellee,

 and

 ACHIEVER INDUSTRIES, LTD.,

 Intervenor.
 ___________________________

 DECIDED: October 7, 2004
 ___________________________

Before CLEVENGER, BRYSON, and LINN, Circuit Judges.
BRYSON, Circuit Judge.
 This is one of two related appeals from a decision of the International Trade Commission in a
case involving “single-use” or “disposable” 35 mm film cameras, more formally known as lens-fitted
film packages (“LFFPs”). In 1998, appellant Fuji Photo Film Co., Ltd., filed a complaint with the
Commission alleging that various respondents were violating section 337 of the Tariff Act of 1930 as
amended, 19 U.S.C. § 1337, by importing LFFPs that infringed a number of Fuji’s utility and design
patents. The Commission initiated an investigation. At the conclusion of the investigation, the
Commission found that 26 respondents had infringed one or more of Fuji’s patents. As a remedy, the
Commission issued a general exclusion order under 19 U.S.C. § 1337(d)(2) excluding cameras covered
by various claims of 15 Fuji patents from entry into the United States. The Commission also issued
cease and desist orders to 20 domestic respondents who were found to have significant amounts of
infringing inventory in this country. On appeal, this court upheld the general exclusion order and
the cease and desist orders in pertinent part. Jazz Photo Corp. v. Int’l Trade Comm’n, 264 F.3d
1094 (Fed. Cir. 2001).
 In June 2001, Fuji sought additional relief. It filed a complaint seeking enforcement of the
prior orders, modification of the general exclusion order, and an advisory opinion as to the scope
of the original exclusion order. Fuji named 20 respondents in the new proceeding, many of which
were not respondents in the earlier proceeding. In May 2002, the administrative law judge to whom
the case was assigned issued an initial advisory opinion and an enforcement initial determination in
which he made 59 infringement determinations involving seven patents. In June 2003, the Commission
decided not to review the portions of the initial advisory opinion and enforcement initial
determination that are pertinent to this appeal. Those orders thus became the orders of the
Commission.
 Fuji took this appeal from the Commission’s orders. It has raised objections to the
Commission’s disposition of several of the patent issues and has challenged two aspects of the
Commission’s rulings on matters of remedy. We affirm the Commission’s rulings on all but one of the
patent issues, and we affirm the Commission’s rulings on the two remedial issues.
 I
 Fuji’s first argument is that the Commission erred in its construction of claim 1 of Fuji’s
reissued U.S. Patent No. Re. 34,168 (“the ’168 patent”). The relevant portion of that claim is a
limitation that refers to the front cover section of the camera. That limitation reads as follows,
with the disputed language emphasized:
 a front cover section which is attached to said main case section and closes said open
 front of said main case section to cover the majority of said taking lens and said
 shutter means and said film transporting means, said front cover section being formed
 with at least one opening for partly receiving therein a member of one of said means . .
 . .

 Fuji argued to the Commission that several cameras infringed claim 1 of the ’168 patent
because in each of the accused cameras an opening in the front cover of the camera received at least
one of (1) the film transporting means, (2) the shutter means, or (3) the taking lens. The
Commission ruled that based on a proper construction of the terms “opening” and “said means” the
accused cameras did not infringe.
 A
 The Commission construed the term “opening” in claim 1 of the ’168 patent to mean a “hole,
breach, or aperture.” Fuji argues that the term should be construed more broadly, to include “[a]n
open space serving as a passage or gap,” or “an unobstructed or unoccupied space or place.”
 Claims must be read in the context of the specification of which they are a part. Budde v.
Harley-Davidson, Inc., 250 F.3d 1369, 1379 (Fed. Cir. 2001). The term “opening,” as used throughout
the ’168 patent, refers to an opening in the cover of a disposable camera. The specification makes
clear that the front cover section consists of a surface that encloses the camera body and that is
perforated in several places. Because the patent consistently uses the term “opening” to refer to
the perforations in the camera’s cover sections or external container, the context strongly suggests
that “opening” means a hole, breach, or aperture in the cover, not a three-dimensional open space of
the sort that Fuji contends should be part of the construction of the term.
 Each time the term “opening” is used in the specification, it refers to a hole, breach, or
aperture in the camera cover, either by textual description or by reference to the patent figures.
In support of its broader claim construction, Fuji points to a sentence from the specification that
describes the lens hole in the front cover as being “defined by a circular boss 37a.” ’168 patent,
col. 5, ll. 27-29. Because the circular boss consists of a hollow bulge in the front cover section,
and because the specification states that the hollow bulge is “for receiving therein the taking
lens,” Fuji argues that the term “opening” must be interpreted to include an open space such as is
created by a bulge in the camera cover.
 Significantly, the sentence on which Fuji relies does not refer to the circular boss as an
“opening.” Nor is the circular boss ever referred to as an opening. To the contrary, the
specification characterizes the lens hole as being “defined by” the circular boss, and it
characterizes the lens hole as an “opening.” See ’168 patent, col. 6, ll. 56-62. The sentence
cited by Fuji thus does not support Fuji’s argument at all, but in fact indicates that what the
patent refers to as an “opening”—the lens hole—is different from what the patent refers to as the
“boss” that surrounds and defines the opening. We therefore agree with the Commission that the
claimed “front cover section being formed with at least one opening” uses the term “opening” to
refer to a hole, breach, or aperture.
 B
 Fuji next argues that the Commission erred in its construction of the term “said means” in
claim 1 of the ’168 patent. The Commission ruled that the reference to “said means” included the
“shutter means” and the “film transporting means,” but did not include the “taking lens.” Because
the taking lens was not denominated as a “means” in the claim, the Commission held that the taking
lens was not one of the “said means” referred to in the limitation requiring a front cover having
“at least one opening for partly receiving therein a member of one of said means.” The result of
the Commission’s construction of the “said means” limitation is that in order for an accused camera
to infringe, either the shutter means or the film transporting means must be received by an opening
in the camera’s front cover.
 Fuji argues that, notwithstanding the omission of the word “means” following “taking lens,” the
taking lens should still be considered one of the “said means” referred to in claim 1. In support
of its argument, Fuji points out that other parts of the patent refer to the taking lens as a
“means,” and that the patent discloses cameras in which the taking lens is received by a hole in the
camera’s front cover.
 The plain meaning of the claim language provides clear direction here. The word “means” is
used in reference to two of the three components set forth in the “front cover section” limitation
(“shutter means” and “film transporting means”) but not the third (“taking lens”). Moreover, the
same distinction is found in the preamble of claim 1, which refers, like the text of the claim, to
“a taking lens, shutter means, and film transportation means.” ’168 patent, col. 9, ll. 31-32. The
patent drafter’s repeated use of the term “means” in connection with only two of the three
components provides strong support for the Commission’s construction, which interprets the claim as
it is written, as opposed to Fuji’s construction, which requires that the word “means” be read into
a portion of the claim where it is conspicuously absent.
 Nor does the specification require a different construction. While all the embodiments of the
’168 patent disclose a lens protruding through a hole in the front cover of the camera, the patent
does not disclose any embodiment in which the lens is the sole element that is partly received by an
opening in the camera cover. The specification therefore does not refer to any embodiments that
would be outside the scope of the claim as the Commission has construed it. Although the
specification makes clear that the lens in each camera is mounted on the main case section and
protrudes through an opening in the front cover section, the question is not whether claim 1
requires a protruding lens. Rather, the question is whether a camera that has an opening for the
lens thereby satisfies the requirement of claim 1 that the cover contain “at least one opening for
partly receiving therein a member of one of said means.” The plain language of the claim requires a
member of either the shutter means or the film transporting means to be partly received by an
opening in the cover and does not address whether the taking lens is also received by an opening.
That construction of the claim language is not at odds with anything in the specification; it is not
inconsistent with any embodiment described in the patent; and it does not produce a nonsensical
result. Indeed, as a way of claiming a camera in which either or both of the shutter means and the
film transporting means must be received by an opening in the camera cover, the language used in the
claim is perfectly suitable.
 Fuji suggests that the absence of the word “means” after “taking lens” was an inadvertent
omission and that this court should, in effect, correct the omission through claim construction.
There is no indication, however, that the selected language was the product of error and as such
should be disregarded. During prosecution, the examiner stated, in reference to the claim that
ultimately became claim 1 of the ’168 patent:
 In claim 1, lines 12 and 13, there is no proper antecedent basis in the claim for “said means
 projecting beyond surfaces of said main case section”. If applicant intends to recite only
 “said means” (referring back to the previous two means), then applicant should clearly indicate
 what the description “projecting beyond surfaces of said main case section” modifies.

 In that rejection, the examiner made clear that he believed “said means” referred to two
means, not three. The applicant responded to the examiner’s rejection by amending the claim to
clarify the antecedent basis for the term “said means.” In so doing, however, the applicant never
disputed that the “means” in question referred to the “previous two means,” as the examiner had
stated. That exchange indicates not only that the applicant’s attention was called to the
examiner’s interpretation of “said means” as not including the “taking lens,” but also that the
applicant was invited to correct the examiner’s interpretation—an invitation the applicant did not
accept. Although caution must be used in attaching weight to an applicant’s silence in response to
an examiner’s statement about claim scope, see 3M Innovative Props., Inc. v. Avery Dennison Corp.,
350 F.3d 1365, 1373-74 (Fed. Cir. 2004); Inverness Med. Switz. GmbH v. Warner Lambert Co., 309 F.3d
1373, 1380 (Fed. Cir. 2002), the applicant’s failure to correct the examiner’s characterization of
the “said means” as referring to only two means rather than three supports the inference that the
omission of the word “means” after “taking lens” was not inadvertent.
 If the omission of the word “means” after “taking lens” was an oversight, it should have been
corrected with an amendment or by some other timely measure to correct the error. Since no
amendment or other corrective measure was proposed, we have no way of knowing whether it would have
been granted, i.e., whether the broader claim scope that Fuji now seeks would have been available to
it. As we have previously observed, “as between the patentee who had a clear opportunity to
negotiate broader claims but did not do so, and the public at large, it is the patentee who must
bear the cost of its failure to seek protection” for particular subject matter. Sage Prods., Inc.
v. Devon Indus., Inc., 126 F.3d 1420, 1425 (Fed. Cir. 1997); see also Lemelson v. Gen. Mills, Inc.,
968 F.2d 1202, 1208 (Fed. Cir. 1992) (“Other players in the marketplace are entitled to rely on the
record made in the Patent Office in determining the meaning and scope of the patent.”).
 Fuji points to the use of the phrase “said taking lens means” in claim 3, which is dependent
on claim 1, as well as other references to “taking lens means” in the specification. Those
references, Fuji argues, require that the “taking lens” of claim 1 be construed to incorporate the
“means” language. While it is true that the use of the term “taking lens” in claim 1 is
inconsistent with the use of the term “said taking lens means” in claim 3, it is by no means clear
how that inconsistency would have been resolved if the applicant or the examiner had noticed it.
The inconsistency could just as easily have been resolved by omitting the word “means” from claim 3
as by adding the word “means” after “taking lens” in claim 1. Accordingly, the inconsistency
between claims 1 and 3 does not indicate that claim 1 should have been construed as if it included
the phrase “taking lens means.”
 As Fuji asserts, the phrase “taking lens means” is used twice in the specification. But the
term “taking lens” without the word “means” is used 13 times in the specification, so there is no
basis for assuming that the use of the term “taking lens” without the term “means” was simply a one-
time departure from a contrary usage employed throughout the patent. Moreover, while the “Summary
of the Invention” section of the patent refers to the “taking lens means” and states that the front
cover of the camera has “at least one opening for partially receiving therein a member of at least
one of the means and elements mounted on the main case section,” ’168 patent, col. 2, ll. 41-43, the
“Background of the Invention” section refers to the “present invention” as relating to a
photographic film package having “a taking lens, a photographic transporting means, an exposure
means, and their associated elements,” id., col. 1, ll. 10-14. In light of the fact that the
invention is described both narrowly and broadly in the specification, we reject Fuji’s argument
that the specification dictates that the claim language be read expansively.
 Finally, Fuji argues that the Commission’s claim construction conflicts with the claim
construction adopted in the original investigation in this case. We do not agree. The infringement
analysis in the initial determination was made pursuant to a stipulation with respect to the meaning
of the claim terms by one of the respondents in that proceeding. Since the respondents who are
affected by the claim construction in the present proceedings were not parties to that stipulation,
they are not bound by it, nor does the administrative law judge’s acceptance of the stipulation
constitute a formal claim construction. Therefore, even if a construction made in the initial
determination proceedings governs the Commission’s subsequent enforcement proceedings, as Fuji
contends, we find that nothing done in the previous proceedings barred the Commission from reaching
the conclusions it did about the proper construction of claim 1 of the ’168 patent. Accordingly, we
uphold the Commission’s construction of the pertinent claim language and reject Fuji’s argument
based on that claim.
 II
 Claim 8 of U.S. Patent No. 4,884,087 (“the ’087 patent”) recites “[a] lens-fitted photographic
film package comprising a light-tight film casing which must be destroyed to open the same . . . .”
Claim 1 of U.S. Patent No. 4,833,495 (“the ’495 patent”) contains similar language. At the
conclusion of the initial investigation, the administrative law judge determined that the
requirement that a light-tight film casing “must be destroyed to open the same” means that the
camera “cannot be opened without losing its light tightness and . . . cannot be readily reloaded
like a conventional camera.” Fuji and the Commission agree with that construction. Intervenor
Achiever Industries, Inc., argues that the Commission’s claim construction is too broad and that the
“must be destroyed” limitation requires that the film casing be constructed so that it must be
broken or substantially disassembled in order to be opened. Even under the broader construction,
however, Achiever argues that the administrative law judge properly concluded that its accused
cameras do not satisfy the “must be destroyed” limitation. The Commission agrees with Achiever on
that point.
 The “must be destroyed” issue implicates certain camera models produced by respondents Achiever
and Highway Holdings. The administrative law judge found that the evidence showed that neither
maker’s accused cameras had film casings that “must be destroyed to open the same.” The
administrative law judge therefore held that the accused cameras did not infringe either of the
asserted claims of the ’087 and ’495 patents. We review the administrative law judge’s findings on
the issue of infringement for substantial evidence. Oak Tech., Inc. v. U.S. Int’l Trade Comm’n,
248 F.3d 1316, 1324-25 (Fed. Cir. 2001). Because we conclude that substantial evidence supports the
administrative law judge’s noninfringement findings with respect to both models even under the
administrative law judge’s claim construction, we find it unnecessary to consider Achiever’s
argument that the administrative law judge’s claim construction was too broad.
 A
 Fuji’s arguments with respect to both the Achiever and Highway Holdings cameras center on the
meaning of the phrase “reloaded like a conventional camera” in the administrative law judge’s claim
construction. Fuji argues that because the accused cameras are not marked or marketed as being
reloadable, and because consumers cannot readily purchase the cartridges necessary to reload the
cameras, the cameras cannot be reloaded “like a conventional camera.” Fuji also contends that the
accused Achiever cameras cannot be reloaded like conventional cameras because conventional cameras
do not need to be “pried open,” unlike the film casing of the Achiever cameras, and because the film
counters on the accused cameras do not automatically reset as they do on conventional cameras.
 Fuji’s arguments distort the Commission’s claim construction and take the analogy to
conventional cameras to the point of disregarding the plain language and prosecution history of the
claim. The administrative law judge referred to the process of reloading “like a conventional
camera” to distinguish between cameras that could not be reloaded with film and those that could.
The administrative law judge’s claim construction did not mean that the “must be destroyed”
limitation would be satisfied unless the accused camera performed like a conventional 35 mm film
camera in all respects. The point of the reference to a conventional camera was to explain that the
“must be destroyed” limitation would not be met if a consumer could open the film casing and replace
the film in the accused camera without causing the film compartment to lose its light-tightness.
Whether other features of the camera, or the absence of reloading instructions, or the difficulty of
obtaining suitable film would make it more difficult for a consumer to reuse the camera than would
be the case for a conventional 35 mm camera is irrelevant to the administrative law judge’s claim
construction.
 The prosecution history of the ’087 patent supports this characterization of the administrative
law judge’s claim construction. In the initial determination, the administrative law judge noted
that the applicants added the words “which must be destroyed to open the same” to claim 8 of the
’087 patent in order to distinguish the invention from several prior art references, including a
U.S. patent to Hamada. The Hamada patent disclosed a compact camera that could be exchanged at a
camera shop for a new camera or reloaded by the camera shop for the customer. Thus, it is clear
that the “must be destroyed” limitation was meant to address the capacity of the camera to be
reloaded, and that the language was not meant to carry with it all the features typically associated
with conventional reloadable cameras, such as the automatic resetting of film counters, the ready
availability of replacement film, and the ease of loading that film.
 B
 There was substantial evidence before the administrative law judge that the light-tight film
casings of the accused Achiever cameras did not need to be destroyed in order to open the cameras
and that the Achiever cameras could be reloaded without damaging the cameras. In fact, substantial
evidence showed that the cameras could be opened and reclosed by consumers with relative ease and
would maintain their light-tightness afterwards.
 The administrative law judge found that the accused Achiever cameras could be opened with a
thumbnail and did not require the use of a prying tool. The back covers, the administrative law
judge found, could be readily snapped back in place without any apparent loss of light-tightness.
In addition, as the administrative law judge noted, Achiever introduced evidence that the accused
Achiever cameras did not have to be destroyed or even disassembled in order to open the light-tight
film casing and remove the film, and that they could be reloaded by use of their hinged backs and
finger releasable tabs. Furthermore, the administrative law judge noted that the wife of one of the
expert witnesses was able to obtain through the Internet the film needed to reload the Achiever
cameras, thus demonstrating that reloading those cameras was not just theoretically possible, but
could be done in practice. Because substantial evidence supported the administrative law judge’s
conclusion that the accused Achiever cameras did not have film casings that “must be destroyed to
open the same,” even under the administrative law judge’s broad construction of that claim language,
we uphold the Commission’s determination of noninfringement with respect to those cameras.
 C
 Fuji argues that the accused Highway Holdings cameras cannot be reloaded like conventional
cameras and that the evidence does not show that they retain their light-tightness after being
opened. Fuji’s arguments with respect to the “conventional camera” issue are essentially the same
as its arguments regarding the Achiever cameras. Fuji argues that consumers cannot use standard 35
mm film in the Highway Holdings cameras and cannot purchase specialized film replacement cartridges
for those cameras. However, the administrative law judge’s claim construction did not require proof
that replacement film cartridges were readily available to consumers; the cameras would not fall
within the scope of the claims if the cameras could be opened and reloaded without loss of light-
tightness in their film casings.
 Fuji points out that its expert could not open and reload a Highway Holdings camera
successfully. The administrative law judge, however, found that Highway Holdings’ expert could do
so readily and was able to show how it was done. Highway Holdings’ expert demonstrated the
technique for opening, reloading, and closing the camera while maintaining its light-tightness by
using a specially designed clip, and he testified that Fuji’s expert was not performing the
procedure correctly. That evidence, which the administrative law judge credited, constituted
substantial evidence that the Highway Holdings camera could readily be reloaded without destroying
the light-tightness of its film canister. Thus, substantial evidence supported the Commission’s
conclusion that the Highway Holdings cameras did not infringe the asserted claims of the ’087 and
’495 patents, even under the administrative law judge’s claim construction.
 III
 Claim 1 of U.S. Patent No. 4,972,649 (“the ’649 patent”) recites a method for assembling a lens-
fitted film package consisting of three steps:
 winding a film withdrawn from said light-tight container in a roll in a darkroom;
 loading said film in a roll and said light-tight container from which said film was
 withdrawn into separate receiving chambers formed in one of said sections of said
 light-tight casing of said lens-fitted photographic film package; and
 fixing said back cover section to said main body section so as to assemble light-tightly
 said lens-fitting photographic film package.

 Although the words “in a darkroom” appear in only the first of the three steps, the Commission
argues that the “in a darkroom” limitation should be read into the remaining two steps. The
Commission argues that the claim must be read in that manner because in the initial determination
the administrative law judge construed the claim to require that all three steps be performed in a
darkroom. According to the Commission, that unappealed claim construction is binding on Fuji in
this proceeding as law of the case.
 Fuji points out that in the initial investigation there was no disputed issue as to whether
the last two steps required a darkroom, and that there was no ruling against Fuji on that issue. We
agree that because there was no adverse judgment against Fuji with respect to the “in the darkroom”
limitation in the initial determination, there was no reason for Fuji to appeal the issue, and
Fuji’s failure to appeal did not result in an abandonment of that claim under 19 C.F.R. §
210.43(b)(4) (“A party’s failure to petition for review of an initial determination shall constitute
abandonment of all issues decided adversely to that party in the initial determination.”).
Accordingly, we review the Commission’s claim construction de novo.
 The Commission acknowledges that the “in a darkroom” limitation is found in the first step of
the claim but not in the other two. The Commission points out, however, that the embodiments of the
process of claim 1 that are set forth in the specification describe the entire assembly process as
being performed in a darkroom. Because those embodiments describe all three steps as being
performed in the darkroom, the Commission argues that claim 1 should be construed to apply the “in
the darkroom” requirement to all three steps of the process.
 The fact that the “in a darkroom” limitation was included in the first step and omitted from
the second and third steps provides strong textual support for Fuji’s argument that the claim should
be construed to distinguish between the first step and the other two. The Commission’s argument
that “there is no suggestion in the ’649 patent that steps 2 and 3 of claim 1 could be performed
outside a darkroom” has it backwards; the proper question is whether the specification indicates
that the second and third steps cannot be performed outside a darkroom, and thus that the claim must
be interpreted more narrowly than its language appears to require. See Teleflex, Inc. v. Ficosa N.
Am. Corp., 299 F.3d 1313, 1325 (Fed. Cir. 2002) (an accused infringer cannot overcome the heavy
presumption that claims should be given their ordinary meaning “simply by pointing to the preferred
embodiment or other structures or steps disclosed in the specification”); Liebel-Flarsheim Co. v.
Medrad, Inc., 358 F.3d 898, 906 (Fed. Cir. 2004) (“the claims of the patent will not be read
restrictively unless the patentee has demonstrated a clear intention to limit the claim scope”).
 The administrative law judge pointed to various statements in the specification that the
administrative law judge interpreted as indicating that the entire process of claim 1 had to be
performed in a darkroom. In each instance that such a statement is made, however, the context makes
it clear that the statement refers to a preferred embodiment of the invention, not to the invention
as a whole. Thus, the statement that “[f]ilm loading and film package assembly has to be done in
the dark room,” ’649 patent, col. 5, ll. 33-34, comes in a portion of the specification that
describes “a first preferred embodiment of the present invention,” id. at col. 4, ll. 10-11, and is
immediately followed by a reference to the “film package of this embodiment,” id. at col. 5, ll. 34-
35. Likewise, the statement that “[t]his loading operation is done in a dark room,” id., at col. 7,
ll. 26-27, is in a section of the specification that describes “another preferred embodiment of the
lens-fitted film package,” id. at col. 7, ll. 3-5. And the statement that “[i]n the dark room . . .
are carried out the steps of making a film roll . . . inserting the rolled film . . . into the film
roll receiving chamber . . and securing the back cover section,” id., col. 13, ll. 49-58, appears in
a portion of the specification that describes, “by way of example, a film loading apparatus for
automatically loading a film roll and a film patrone into the main body section of the lens-fitted
film package,” id. at col. 12, ll. 40-43.
 Nothing in the ’649 patent requires that a darkroom be used for all the steps of assembling an
LFFP. In fact, for some of the claimed assembly methods, the patent expressly states that certain
steps can be conducted outside a darkroom. For example, claim 9 contains no reference to a
darkroom, and the specification explains that the film-winding operation recited in that claim can
be performed in daylight. ’649 patent, col. 12, ll. 13-14. Claim 9 thus demonstrates that the ’649
patent does not assume that all the assembly steps of the claimed methods must be performed in a
darkroom, and it further suggests that when the claim is silent about the need for darkroom
assembly, a darkroom is not necessarily required.
 Nor can steps 2 and 3 of claim 1 be assumed to require a darkroom on the ground that it would
be difficult to devise a means for performing those steps outside a darkroom. All that is necessary
to perform those steps outside a darkroom would be to protect the roll of unexposed film from light
during the process of loading the film into the camera and securing the back cover of the camera to
the main body, as Fuji’s expert testified. In short, we discern no reason to read into claim 1
limiting language that is not there, and we therefore reject the Commission’s conclusion that,
notwithstanding the plain language of the claim, all three steps of claim 1 must be performed in a
darkroom.
 Intervenor Achiever makes several arguments in support of the Commission’s construction of
claim 1 of the ’649 patent, but we do not find those arguments persuasive. First, Achiever argues
that an LFFP requires unexposed film in order to function, and because the back cover of the package
is not closed until step three, all the steps that occur prior to closing the casing must be
performed in a darkroom. The fact that the unexposed film must be protected from light, however,
does not mean that all the loading steps must be performed in a darkroom. Achiever’s citation to
the testimony of Fuji’s expert does not support its argument. The expert merely acknowledged that
unexposed film must be protected from light, and that if it is not protected it will become fogged
and unusable.
 Achiever suggests that if the claim language were not interpreted to require all three steps to
be performed in the darkroom, the claim would not be supported by the specification, and that the
claim should be read narrowly for that reason. It is a familiar axiom of patent law, however, that
the scope of the claims is not limited to the preferred embodiments described in the specification.
Cordis Corp. v. Medtronic AVE, Inc., 339 F.3d 1352, 1365 (Fed. Cir. 2003). While the specification
refers to the need to avoid exposing the film that is removed from the light-tight canister and
loaded into the camera, nothing in the specification suggests that the only way to avoid exposing
the film during the loading process is to perform the process in a darkroom. Absent a clear
indication in the specification that the invention was limited to processes performed entirely in a
darkroom, or evidence that a person of ordinary skill in the art of designing cameras would not have
known how to perform those steps anywhere but in a darkroom, the scope of claim 1 is not limited to
the particular method of avoiding premature exposure that was described in the specification. See
PIN/NIP, Inc. v. Platte Chem. Co., 304 F.3d 1235, 1248 (Fed. Cir. 2002); Lampi Corp. v. Am. Power
Prods., Inc., 228 F.3d 1365, 1378 (Fed. Cir. 2000).
 In sum, the “in a darkroom” limitation of claim 1 of the ’649 patent is not applicable to steps
2 and 3, and nothing in the specification requires that the plain language of the claim be read more
restrictively. We hold that the Commission erred in ruling otherwise.
 IV
 Fuji’s final arguments on appeal relate to the Commission’s refusal to issue cease and desist
orders to two groups of companies: those that import infringing products but maintain no inventory
in the United States; and those that do not import products but do business through third parties.
 A
 The Commission found that respondents Achiever, Highway Holdings, and VastFame all
manufactured, imported, or sold infringing products, but it found that none maintained any inventory
in the United States. For that reason, the Commission concluded there was no threat of imminent
harm to Fuji, because the general exclusion order from the initial investigation was being enforced
by the Customs Service.
 This court may set aside the Commission’s choice of remedy only if it is legally erroneous,
arbitrary and capricious, or constitutes an abuse of discretion. If the Commission has considered
the relevant factors rationally and not made a clear error of judgment, the determination will be
affirmed. Hyundai Elec. Indus. Co. v. Int’l Trade Comm’n, 899 F.2d 1204, 1209 (Fed. Cir. 1990).
That is particularly true in the case of cease and desist orders which, by statute, are permissive
measures. See 19 U.S.C. § 1337(f)(1) (“[i]n addition to, or in lieu of [issuing exclusion orders],
the Commission may issue” a cease and desist order).
 Fuji takes issue with what the Commission describes as its standard practice of not issuing
cease and desist orders against respondents who have no domestic inventory. That practice is based
on the Commission’s view that ordinarily exclusion orders enforced by Customs should be sufficient
to prevent entry of articles into the United States, whereas an order to Customs is ineffective with
regard to existing stockpiles of domestic inventory. Fuji argues, in effect, that the Commission’s
practice is an abuse of discretion because the Commission’s reliance on Customs to bar the entry of
infringing goods is unrealistic and thus is legally unjustified.
 The administrative law judge found that Fuji had not shown that the general exclusion order
would be inadequate when enforced by Customs in light of the Commission’s new determinations of
infringement. In response, Fuji argues that the Customs Service’s enforcement of a general
exclusion order is ineffective, particularly in light of the Customs Service’s new responsibilities
in combating terrorism. Fuji also argues that the prior Customs Service opinions of noninfringement
issued in this case demonstrate that Customs cannot adequately enforce the general exclusion order.

 With respect to the second point, the Commission’s more recent order has effectively modified
the general exclusion order and provided more guidance as to the scope of the order with respect to
various models of imported cameras. Customs will therefore have new guidance as to the scope of the
general exclusion order, which will assist it in restricting the entry of infringing cameras.
 With respect to the first point, Fuji’s argument is similar to the argument advanced in the
Hyundai case, which we rejected as “a thinly veiled and vaguely expressed dissatisfaction with the
certification procedure it expects the Customs Service to devise when it implements the Commission’s
order.” 899 F.2d at 1210. As we did in Hyundai, we reject Fuji’s suggestion that the Customs
Service is incapable of enforcing the Commission’s general exclusion order effectively because of a
lack of expertise and other priorities. To the extent that Fuji’s argument is directed at a
perceived lack of resources or competence on the part of the Customs Service, we cannot address that
problem through a judicial directive that would, in effect, require the Commission to alter its
practices based on our unsupported suspicion that the Customs Service is incapable of performing the
duties Congress has assigned to it.
 B
 The Commission also declined to issue a cease and desist order to respondent Message Group
because it found that Message Group procures infringing cameras from domestic sources and arranges
for their shipment to American customers. Fuji argues that Message Group arranges for the
infringing cameras to be imported and sold and that, notwithstanding its lack of direct
participation in the importation of the cameras, Message Group is intimately involved in the overall
transactions and therefore should be the subject of a cease and desist order.
 The Commission correctly points out that Fuji named Message Group as a respondent in this
enforcement proceeding, which was directed at enforcing the existing general exclusion order
prohibiting “the unlicensed importation of infringing lens-fitted film packages.” Because the
general exclusion order is limited to importation, it is not an abuse of discretion for the
Commission to limit the remedies to companies that import, either directly or through an agent.
 Fuji argues that the Commission should have found an agency relationship between Message Group
and its domestic importer, and that it should have concluded that as a result of the agency
relationship Message Group should be treated as an importer of infringing goods. The Commission
argues that there was no evidence of anything other than a purchaser-seller relationship between
Message Group and the importer from which Message Group purchased its cameras, and Fuji has not
cited any persuasive evidence to the contrary. Based on the absence of evidence that Message Group
was engaged in an agency relationship that brought its activities within the scope of the general
exclusion order, it was not an abuse of discretion for the Commission to decline to enter a cease
and desist order against Message Group.
 V
 To summarize, we hold that the Commission correctly interpreted claim 1 of the ’168 patent and
claim 8 of the ’087 patent. The Commission’s order with respect to claim 1 of the ’649 patent and
the associated accused products is vacated and the case is remanded for a new determination as to
infringement. Finally, the Commission did not abuse its discretion in refusing to issue cease and
desist orders against foreign respondents with no inventory in the United States and foreign
respondents that did not directly import products into the United States.
 Each party shall bear its own costs for this appeal.
 AFFIRMED IN PART, VACATED AND REMANDED IN PART.