# United States Court of Appeals for the Federal Circuit

---

**ORGANIK KIMYA, SAN. VE TIC. A.S., ORGANIK KIMYA NETHERLANDS B.V., ORGANIK KIMYA US, INC.,**

*Appellants*

**v.**

**INTERNATIONAL TRADE COMMISSION,**
*Appellee*

**ROHM AND HAAS COMPANY, ROHM AND HAAS CHEMICALS LLC, DOW CHEMICAL COMPANY,**
*Intervenors*

---

2015-1774, 2015-1833

---

Appeal from the United States International Trade Commission in Investigation No. 337-TA-883.

---

Decided: February 15, 2017

---

CATHERINE EMILY STETSON, Hogan Lovells US LLP, Washington, DC, argued for appellants. Also represented by JOHN ROBERT ROBERTSON, BENJAMIN HOLT.

SIDNEY A. ROSENZWEIG, Office of the General Counsel, United States International Trade Commission, Washing-

ton, DC, argued for appellee. Also represented by DOMINIC L. BIANCHI, WAYNE W. HERRINGTON.

RAYMOND N. NIMROD, Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY, argued for intervenors. Also represented by WILLIAM ADAMS, JAMES BAKER; S. ALEX LASHER, PAUL F. BRINKMAN, Washington, DC; CHARLES KRAMER VERHOEVEN, San Francisco, CA.

———————————

Before LOURIE, MAYER, and O'MALLEY, *Circuit Judges.*

O'MALLEY*, Circuit Judge.*

Organik Kimya San. ve Tic., A.Ş., Organik Kimya Netherlands B.V., and Organik Kimya US, Inc. (collectively, "Organik Kimya") appeal from the International Trade Commission's ("the Commission" or "ITC")[1] decision imposing default judgment sanctions for spoliation of evidence and entering a limited exclusion order against Organik Kimya. *See Certain Opaque Polymers*, Inv. No. 337-TA-883, 2015 ITC LEXIS 139, at *5–6 (Apr. 17, 2015); *see also Certain Opaque Polymers*, Inv. No. 337-TA-883, at 16–24, *available at* http://www.itcblog.com/images/ commopin883.pdf ("*Commission Opinion*"); *Certain Opaque Polymers*, Inv. No. 337-TA-883, USITC Order No. 27, 2014 WL 5768586 (Oct. 20, 2014) ("*ALJ Order*"). Because the Commission did not abuse its discretion in entering default judgment as a sanction for Organik Kimya's spoliation of evidence and further did not abuse its discretion in entering the limited exclusion order, we *affirm.*

———————————

[1]     This opinion uses "the Commission" to refer to the entity rendering the decision in this case and "ITC" to refer to the party in this appeal and the agency generally.

## I. Background

This case involves trade secrets relating to opaque polymers, which are hollow spheres used as paint additives for interior and exterior paints to increase the paint's opacity. Organik Kimya and Dow Chemical Company ("Dow")[2] both manufacture opaque polymers. Dow is the market leader in supplying opaque polymers to paint manufacturers, both in the United States and worldwide. Dow has maintained this position through a combination of patent and trade-secret protections.

In May 2013, Dow filed a complaint with the ITC requesting an investigation into whether Organik Kimya's opaque polymer products infringed four Dow patents. The ITC granted Dow's request, and the parties began discovery. During the proceedings, Dow amended its complaint to add allegations of trade secret misappropriation when it discovered that Organik Kimya may have coordinated the production of its opaque polymers with the assistance of former Dow employee Dr. Dilip Nene. Dow discovered that other former Dow employees, Dr. Guillermo Perez and Leonard Strozzi, also may have assisted Organik Kimya with its development of opaque polymers. As Dow attempted to obtain discovery relating to the activities of Dr. Perez, Dr. Nene, and Strozzi, however, Dow discovered spoliation of evidence on a staggering scale.

### A. Administrative Law Judge's Findings

#### 1. Findings Relating to Dr. Perez

In response to a discovery order issued by the Administrative Law Judge ("ALJ"), Dow's forensic investigators

---

[2]    Rohm and Haas Company and Rohm and Haas Chemicals LLC became subsidiaries of Dow after Dow acquired Rohm and Haas in 2009. This opinion collectively refers to the companies as "Dow."

traveled to Turkey in February 2014 to inspect Dr. Perez's laptop computer. *ALJ Order*, 2014 WL 5768586, at \*15. Four days before the forensic investigation took place, and three days *after* the ALJ issued the discovery order authorizing the examination of the computer, Organik Kimya began overwriting the laptop's hard drive by copying the Program Files folder at least 108 times. *Id.* at \*15–16. While performing this overwriting, Organik Kimya also backdated the computer's internal clock so that the metadata on the copied files would hide the fact that the overwriting took place only days before the inspection. *Id.* at \*16. Organik Kimya even ran a program called CCleaner "multiple times to delete a large percentage of the C drive and all of the D drive in Dr. Perez's laptop." *Id.* To ensure that its efforts had been successful, Organik Kimya also used a program called WinHex at least twelve times to see whether it could recover any of the deleted information before the court-ordered forensic investigation took place. *Id.* at \*52.

After Dow informed the ALJ of the forensic examiners' findings, Organik Kimya submitted a letter to the ALJ explaining that the IT work done on Dr. Perez's computer was simply maintenance undertaken because Dr. Perez was encountering troubles with the computer. *Id.* at \*46–47. Organik Kimya also asserted that there was "no ill-intent or desire to destroy evidence." *Id.* at \*47.

The ALJ found Organik Kimya's explanation to be "a work of fiction." *Id.* He found that Organik Kimya's actions made it impossible to know the exact volume and content of any previously recoverable data, but noted it was at least clear that it involved "potentially hundreds of thousands of files." *Id.* at \*16. The ALJ also found that there was "no innocent explanation" for Organik Kimya's conduct relating to the use of the CCleaner program. *Id.* at \*52.

The ALJ concluded that this evidence "leads me to the inescapable conclusion that Organik Kimya acted in bad faith when, in contravention of Order No. 16, Organik Kimya undertook the massive spoliation of evidence on Dr. Perez's laptop . . . . In fact, were there such a thing, I would find Organik Kimya's egregious behavior to be gross bad faith." *Id.* at *54. The ALJ further stated that Organik Kimya's actions, "coupled with the multitude of lies Organik Kimya knowingly and deliberately presented to the undersigned to hide or explain away its wrongdoing, leave[] no doubt that Organik Kimya destroyed evidence on Perez's laptop with the intent to impair Dow's ability prove [sic] its allegations of trade secret misappropriation." *Id.* The ALJ found the spoliated evidence "relevant to Dow's allegation of trade secret misappropriation and its destruction prejudicial to Dow's ability to prosecute same." *Id.* at *58.

## 2. Findings Relating to Dr. Nene

Organik Kimya failed to identify Dr. Nene in response to an interrogatory seeking the identification of all former Dow employees who had worked for Organik Kimya. J.A. 14878–79. When Dow discovered Dr. Nene's involvement with Organik Kimya and served a subpoena upon him, Dr. Nene asserted that his communications with Organik Kimya were never of a technical nature. *ALJ Order*, 2014 WL 5768586, at *22. A forensic inspection conducted by Dow, however, found that Dr. Nene engaged in various technical discussions with Organik Kimya. *Id.* at *23. Dow also uncovered two emails relating to Dr. Nene's involvement with Organik Kimya and evidence of Organik Kimya's attempt to purge those emails; these emails read: "Confidential information related to the consultant [Dr. Nene] are still recorded here, they were supposed to be erased by the IT department," *id.* at *15; and "Basak, can you print them and give them to me please? Then we should erase them from the system please," J.A. 4073.

During discovery, Dow uncovered a suspicious meeting between Dr. Nene and Organik Kimya's co-CEO at a hotel in Rotterdam. *ALJ Order*, 2014 WL 5768586, at *44. After Dow served Organik Kimya with the complaint in this matter, Mr. Kaslowski, Organik Kimya's co-CEO, called Dr. Nene directly and directed him to travel to Rotterdam for a "safety audit." *Id.* When Dr. Nene traveled to Rotterdam about a month later, Mr. Kaslowski was the first person to meet with Dr. Nene. They met at Dr. Nene's hotel rather than at Organik Kimya's offices. *Id.* Both Dr. Nene and Organik Kimya's co-CEO denied having this meeting, but the forensic investigation confirmed that it occurred. *Id.*

Dr. Nene also admitted that, around the time he received the call from Mr. Kaslowski asking Dr. Nene to travel to Rotterdam for the "safety audit," Dr. Nene "removed the hard drive from his personal computer and smashed it with a hammer and threw it in the garbage." *Id.* Dr. Nene testified that he smashed the hard drive to make sure that the information on the drive could not be recovered. *Id.* at *25. He also admitted to destroying a bag full of zip drives. *Id.* The ALJ found this evidence "very significant, as well as extremely troubling, as it shows not only joint purpose, but tends to establish Dr. Nene and Mr. Kaslowski recognized the obvious implication that such a meeting would have since it occurred shortly after this investigation commenced." *Id.* at *44. The ALJ also determined that "it seems unlikely the co-CEO of Organik Kimya would participate in a routine safety audit and meet in a hotel to discuss it and then lie about the meeting afterwards." *Id.*

The ALJ found sufficient evidence to conclude that Organik Kimya had the ability to control Dr. Nene and had failed to act responsibly to preserve Dr. Nene's information, thereby rendering Organik Kimya in reckless disregard of its duty to preserve Dr. Nene's information. *Id.* at *57. But the ALJ determined that there was insuf-

ficient evidence to link Dr. Nene's deletion of evidence to a design by Organik Kimya to destroy the data deliberately. *Id.* The ALJ accordingly found "no sanction-worth[y] spoliation" relating to Dr. Nene's documents. *Id.* at *65.

### 3. Findings Relating to Strozzi

On March 21, 2014, one day after the ALJ ordered Strozzi's files to be preserved and four days prior to the scheduled forensic examination of Strozzi's computer, someone logged into the computer and deleted 2,742 user-created files and folders, many of which were later recovered and found to be responsive to previously identified keyword search terms. *Id.* at *20–21. The inspectors also found evidence of numerous undisclosed and unproduced USB storage devices used on Strozzi's work computer. *Id.* at *21. But before Dow learned about the existence of the external storage devices, Strozzi took his computer bag, which had his computer and storage devices, "into a bathroom of a highway rest stop, but 'accidentally' left [it] there." *Id.*

The ALJ found that Organik Kimya had control over Strozzi's laptop but not the external storage devices. *Id.* at *54. The ALJ also found that Organik Kimya had never given its employees a litigation hold notice, instead leaving it up to each individual employee whether to save or delete electronic files. *Id.* at *56. Although the evidence from Strozzi's laptop was later recovered through forensic investigation, the ALJ determined that the deletion of the files "evinces an attempt to cover-up wrong doing. What is even more shocking is that at the time I issued my Preservation Order, Organik Kimya was already on notice of the massive spoliation of evidence on Dr. Perez's laptop." *Id.* at *56. The ALJ noted that "[t]he matter is even worse when discussing the loss of the laptop itself, for Organik Kimya had the laptop in its possession for the forensic inspection and yet inexplicably returned it to Strozzi, which allowed him to 'lose' it." *Id.*

at *57. Additionally, Dow only received a small portion of the deleted documents because only a few were responsive to the search terms the parties identified prior to the forensic search. *Id.* at *63. The ALJ noted, however, that many of the additional files for which Dow received the file name but never saw the full document seemed plainly relevant to the case based on the file names, whether or not associated with the identified search terms. *Id.* The ALJ determined that Organik Kimya failed to show that these documents were neither relevant nor prejudicial. *Id.*

As to Organik Kimya's conduct relating to Strozzi's laptop, the ALJ found "the spoliation of evidence on the Strozzi laptop and the spoliation of the Strozzi laptop itself was done in an effort to prevent Dow from access to evidence it might use to support its allegations in this investigation." *Id.* at *57. The ALJ concluded that "the spoliation of evidence on the Strozzi laptop and the loss of the Strozzi laptop itself was in bad faith." *Id.* The ALJ also found "at least some of the documents deleted from the Strozzi laptop to be relevant and prejudicial to Dow's allegations in this investigation." *Id.* at *63.

### 4. The ALJ's Conclusions

On May 19, 2014, Dow moved for sanctions, including a default judgment against Organik Kimya. *Id.* at *2. Two days later, Organik Kimya filed a motion to terminate the investigation by consent order. *Id.* at *66 n.19. Organik Kimya "agreed to completely and indefinitely withdraw the accused products from the U.S. market." J.A. 9142. Organik Kimya admitted that "a portion of the hard drive of Mr. Perez's computer was overwritten in such a way that previously deleted files were potentially rendered unrecoverable through forensic means." *ALJ Order*, 2014 WL 5768586, at *29. Nevertheless, Organik Kimya urged the ALJ to enter its proposed consent order rather than a default judgment.

The ALJ conducted a two-day hearing on Dow's sanction motion and Organik Kimya's consent order motion. At the hearing, Organik Kimya also argued in the alternative that any sanction be limited to an adverse inference precluding Dr. Perez from testifying about Organik Kimya's alleged independent development of its opaque polymers. J.A. 11509 at 399:24–400:14. The ALJ granted Dow's motion for default judgment in a 119-page initial determination. *See generally ALJ Order*, 2014 WL 5768586. The opinion recounted Organik Kimya's destruction of evidence in detail. It included the following excerpt as part of its Executive Summary:

> [A]s will be made clear in the pages that follow this is an extreme case, for Organik Kimya flouted its obligation to preserve evidence, deliberately destroyed evidence, and then actively attempted to deceive the undersigned as to what it had done. Given: (1) the grave damage Organik Kimya's deliberate conduct potentially could have on the administration of justice; (2) the need to deter such egregious conduct in the future; and (3) the certain prejudice to Dow, only the strongest remedy available is sufficient.

*Id.* at *2.

When discussing a sanction, the ALJ stated that Organik Kimya's "willful, bad faith misconduct" had deprived Dow of its ability to pursue its trade secret misappropriation claim effectively and the ALJ of his "ability to oversee a prehearing process that would facilitate a fair and timely resolution of this investigation on its merits." *Id.* at *65. The ALJ therefore found that "[n]o sanction short of default is available to return the parties to the position in which they would have been but for the deliberate destruction by Organik Kimya of evidence potentially favorable to Dow." *Id.* The ALJ then explained why shifting the burden of proof and using ad-

verse inferences would not address adequately Organik Kimya's conduct in this case. *Id.* at \*66. According to the ALJ, "no lesser sanction will adequately deter the repetition of this kind of easily accomplished and highly prejudicial destruction of evidence." *Id.*

The ALJ further clarified that he found "Organik Kimya's abhorrent conduct" with regard to Dr. Perez's laptop and files to be "more than sufficient to justify the Default Sanction against Organik Kimya." *Id.* at \*76. He found "Organik Kimya's contumacious and inexplicable conduct" with regard to Strozzi and his documents "to independently justify the most severe sanction, even were I to heed Organik Kimya's lack of prejudice argument." *Id.*

B.  The Commission Affirms the ALJ's Conclusions

The Commission determined that the initial determination "recites in detail the discovery-related misconduct in this investigation," and the Commission affirmed and adopted all of the initial determination's factual findings. *Commission Opinion*, at 6. The Commission also "affirm[ed] and adopt[ed] the ALJ's determination of default." *Id.*; *see also id.* at 12 ("We affirm all of the [initial determination's] findings concerning the default sanction."). The Commission determined that the spoliation of evidence on Dr. Perez's computer "alone is more than sufficient to justify the sanctions ordered by the ALJ." *Id.* at 13. It went on to find that the intentional deletion of files by Strozzi "is at least circumstantial evidence relating to the culpable state of mind found by the ALJ." *Id.* at 14.

Organik Kimya argued that the ALJ failed to consider its proposed lesser sanctions. *See id.* at 14–17. The Commission rejected Organik Kimya's argument as to the consent order, noting that "[t]he Commission has always reserved the right to deny termination by consent in appropriate circumstance." *Id.* at 15. The Commission

also noted that "allowing Organik Kimya to exit the investigation on consent 'without accepting the full measure of its responsibility for its egregious actions' would not be a sufficient deterrent" because, "[i]f such termination were allowed here, future parties may decide to engage in discovery abuse with the understanding that if they are caught they can merely exit the investigation through the consent order procedures without being held accountable for their misconduct." *Id.* at 15–16. As to an adverse inference or some lesser sanction, the Commission stated that "[t]he ALJ also explained why any sanction less than default would be insufficient" and that the Commission could "discern no conflict between the ALJ's determination and *Shepherd* [*v. American Broadcasting Cos.*, 62 F.3d 1469 (D.C. Cir. 1995)]," which Organik Kimya had cited in support for its argument. *Commission Opinion*, at 17.

The Commission found that an exclusion order and a cease and desist order were appropriate remedies. *Id.* at 21. Based on the record evidence, the Commission determined that the evidence demonstrated it would have taken Organik Kimya 25 years to develop a commercial opaque polymer comparable to Dow's without using Dow's trade secrets. *Id.* The Commission therefore found that a 25-year period would be an appropriate length for the exclusion order. *Id.* The exclusion order included a narrowing provision, however, that allows Organik Kimya to seek an opinion from the Commission that would allow Organik Kimya to import products that it shows were developed without using Dow's misappropriated trade secrets. *Id.* at 23–24.

## II. Discussion

### A. Default Judgment Sanction

Any sanctions imposed by the Commission are reviewed for an abuse of discretion. *Genentech, Inc. v. U.S. Int'l Trade Comm'n*, 122 F.3d 1409, 1414 (Fed. Cir. 1997).

An abuse of discretion occurs if "the Commission's sanction decision (1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact findings; or (4) follows from a record that contains no evidence on which the decision-making body could rationally base its decision." *Id.* at 1415.

The parties initially dispute the proper standard for reviewing the Commission's decision to impose default judgment sanctions against Organik Kimya. The ITC and Dow argue that we need only look to 19 C.F.R. § 210.33(b) and Federal Rule of Civil Procedure 37(b) in our review of the sanctions. Under 19 C.F.R. § 210.33(b), the ALJ in an ITC investigation has the authority to issue non-monetary sanctions for failure to comply with an order compelling discovery. The list of possible sanctions includes "any other non-monetary sanction available under Rule 37(b) of the Federal Rules of Civil Procedure." 19 C.F.R. § 210.33(b)(6). Rule 37(b) states that a court may "render[] a default judgment against the disobedient party" if the party fails to obey a discovery order. Fed. R. Civ. P. 37(b)(2)(A)(vi). Because Organik Kimya disobeyed the ALJ's express discovery orders through its spoliation of evidence, the ITC and Dow argue that 19 C.F.R. § 210.33(b) and Rule 37(b) support affirmance of the default judgment sanction.

Organik Kimya argues that the discussion of default judgment sanctions in *Micron Technology, Inc. v. Rambus Inc.*, 645 F.3d 1311 (Fed. Cir. 2011), controls our decision. In *Micron*, we addressed a default judgment sanction imposed by a district court under its inherent authority to control litigation and the judicial process. *Id.* at 1326. In reviewing the district court's decision, we analyzed the district court's findings with respect to: (1) bad faith, (2) prejudice to the opposing party caused by the spoliation, and (3) availability or efficacy of lesser sanctions. *Id.* at 1326–29. Organik Kimya does not challenge the find-

ing of bad faith in this case, but it argues that the Commission erred under *Micron* because the degree of prejudice to Dow was minimal and the Commission did not adequately address the efficacy of lesser sanctions.

We agree with the ITC and Dow that we should consider the sanctions in this case under the standard of 19 C.F.R. § 210.33(b) and Rule 37(b), because the ALJ and the Commission based their decisions on Organik Kimya's express disobedience of the ALJ's discovery orders. *See ALJ Order*, 2014 WL 5768586, at *4 n.2 (explaining that the ALJ used 19 C.F.R. § 210.33(b) and Rule 37, not his inherent authority—to the extent he has such authority—to sanction Organik Kimya); *see also Commission Opinion*, at 12–14 (affirming the ALJ's findings). The ALJ explicitly ordered the forensic inspection of Dr. Perez's computer. *ALJ Order*, 2014 WL 5768586, at *15. After allegations arose that Dow was unable to procure certain discovery from Organik Kimya because documents and files had been destroyed, the ALJ ordered Organik Kimya to preserve its documents and even warned that he would be "mortally annoyed if anything was done to alter, destroy or otherwise mess with the evidence in this case." *Id.* at *18. Organik Kimya's destruction of thousands of documents, despite the ALJ's explicit orders to conserve the documents, brings this case under the purview of 19 C.F.R. § 210.33(b) and Rule 37(b).

As explained above, 19 C.F.R. § 210.33(b) states that an ALJ may order any non-monetary sanction available under Rule 37(b) that is not already included in § 210.33(b). Rule 37 permits a court to render a default judgment against a party that fails to obey an order to provide or permit discovery. Fed. R. Civ. P. 37(b)(2)(A)(vi); *see also Shepherd*, 62 F.3d at 1480 (acknowledging that Rule 37(b) "expressly authorizes dismissal or default for noncompliance with a discovery order"); *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 817–18 (8th Cir. 2001) ("When the facts show willfulness

and bad faith, as in this case, the district court need not investigate the propriety of a less extreme sanction. In such cases, the 'selection of a proper sanction, including dismissal, is entrusted to the sound discretion of the district court.'" (quoting *Avionic Co. v. Gen. Dynamics Corp.*, 957 F.2d 555, 558 (8th Cir. 1992))). Although the entry of a default judgment for failure to comply with a discovery sanction may seem harsh, the Supreme Court has explained that the most severe sanctions must be available to district courts in appropriate cases:

> There is a natural tendency on the part of reviewing courts, properly employing the benefit of hindsight, to be heavily influenced by the severity of outright dismissal as a sanction for failure to comply with a discovery order. It is quite reasonable to conclude that a party who has been subjected to such an order will feel duly chastened, so that even though he succeeds in having the order reversed on appeal he will nonetheless comply promptly with future discovery orders of the district court.

> But here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.

*Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642–43 (1976).

Despite these authorities, Organik Kimya argues that 19 C.F.R. § 210.33 effectively mirrors the inherent authority standard discussed in *Micron*, rather than the Rule 37 standard, because it states that the ALJ can grant relief "as may be sufficient to compensate for the lack of with-

held testimony, documents, or other evidence." 19 C.F.R. § 210.33(b)(6). But we have stated previously that § 210.33(b) is "coextensive" with Rule 37. *Genentech*, 122 F.3d at 1418. We further explained that the "only difference between [§ 210.33] and Rule 37, as construed by the Commission, is that [§ 210.33] does not provide authority to award reasonable expenses and attorney fees as a sanction for cases instituted before August 31, 1994."[3] *Id.* at 1418 n.9; *see also Final Rules for Investigations and Related Proceedings Concerning Unfair Practices in Import Trade*, 59 Fed. Reg. 39,020 (Aug. 1, 1994) (noting that § 210.33(b) was based on Rule 37(b)).

The Commission therefore can issue default judgment sanctions in appropriate cases when a party disobeys a discovery order if the Commission determines that the conduct at issue warrants such sanctions. This does not mean that a party's failure to comply with a discovery order will warrant imposing default judgment sanctions in every case; instead, such sanctions can be imposed in appropriate cases "to penalize those whose conduct may be deemed to warrant such a sanction" and "to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League*, 427 U.S. at 643. We leave the determination of such cases to the sound discretion of the ALJ and the Commission, whose deci-

---

[3] *Genentech* refers to 19 C.F.R. § 210.36(b) instead of § 210.33(b) because the interim rule was found at § 210.36(b). *See Interim Rules Governing Investigations and Enforcement Procedures Pertaining to Unfair Practices in Import Trade*, 53 Fed. Reg. 33,043 (Aug. 29, 1988). In 1994, the rule was moved to § 210.33(b) as part of the final rules. *See Final Rules for Investigations and Related Proceedings Concerning Unfair Practices in Import Trade*, 59 Fed. Reg. 39,020 (Aug. 1, 1994).

sions we review for an abuse of discretion. *See Genentech*, 122 F.3d at 1414.

The ALJ in this case made extensive findings regarding Organik Kimya's spoliation of evidence on multiple occasions despite explicit orders from the ALJ to preserve the evidence. The facts of this case were so extreme that they led the ALJ to explain, "were there such a thing, I would find Organik Kimya's egregious behavior to be gross bad faith." *ALJ Order*, 2014 WL 5768586, at *54. Organik Kimya compounded its actions when it "actively attempted to deceive the [ALJ] as to what it had done." *Id.* at *2. The Commission, in reviewing the ALJ's decision, stated that it "affirm[ed] and adopt[ed]" all of the ALJ's factual findings and his determination of default. *Commission Opinion*, at 6. The Commission did not abuse its discretion in implementing default judgment sanctions because Organik Kimya destroyed "potentially hundreds of thousands of files," *ALJ Order*, 2014 WL 5768586, at *66, despite explicit orders from the ALJ to preserve documents and then tried to deceive the ALJ as to its actions.[4] Indeed, these facts put this case squarely

---

[4]    Even if we were to analyze this case under *Micron*, the result would be the same. Organik Kimya did not contest the finding that it acted in bad faith. The degree of prejudice to Dow was high. The ALJ and the Commission, which adopted the ALJ's findings, found that Organik Kimya destroyed "potentially hundreds of thousands of files," *ALJ Order*, 2014 WL 5768586, at *66, making it "impossible to know the exact volume and content of the destroyed data," *Commission Opinion*, at 17. This "willful, bad faith misconduct" deprived Dow of "its ability to pursue its claim of trade secret misappropriation" and deprived the ALJ of his "ability to oversee a prehearing process that would facilitate a fair and timely resolution of this investigation on its merits." *ALJ Order*,

within the Supreme Court's admonition that "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases" to penalize a party's sanctionable conduct and to deter future parties from repeating such conduct. *Nat'l Hockey League*, 427 U.S. at 643.

### B. The Limited Exclusion Order

If a party is found in default, the Commission can implement relief against the party in default upon the motion of the complainant. 19 C.F.R. § 210.16(c)(1); *see also* 19 C.F.R. § 210.16(a)(2) (specifying that this section applies to parties found in default under § 210.33(b) for failure to make or cooperate in discovery). The Commission will presume the facts alleged in the complaint to be true, and the Commission may issue an exclusion order, a cease and desist order, or both. *Id.* § 210.16(c)(1). This is consistent with 19 U.S.C. § 1337, which states that the Commission shall enter a limited exclusion order if it determines that a violation of § 1337 has occurred and public interest factors do not counsel against its issuance. 19 U.S.C. § 1337(d)(1); *see also Spansion, Inc. v. U.S. Int'l Trade Comm'n*, 629 F.3d 1331, 1358 (Fed. Cir. 2010) ("By statute, the Commission is required to issue an exclusion order upon the finding of a Section 337 violation absent a

---

2014 WL 5768586, at *65. The Commission determined that the lesser sanctions Organik Kimya sought were inadequate. *Commission Opinion*, at 15–16. The Commission also reviewed and adopted the ALJ's findings, which included the determination that "no lesser sanction will adequately deter the repetition of this kind of easily accomplished and highly prejudicial destruction of evidence." *ALJ Order*, 2014 WL 5768586, at *66. The Commission accordingly did not abuse its discretion under *Micron*.

finding that the effects of one of the statutorily-enumerated public interest factors counsel otherwise.").

"[T]he Commission has broad discretion in selecting the form, scope, and extent of the remedy" after finding a violation of 19 U.S.C. § 1337. *Hyundai Elecs. Indus. Co. v. U.S. Int'l Trade Comm'n*, 899 F.2d 1204, 1209 (Fed. Cir. 1990) (quoting *Viscofan, S.A. v. U.S. Int'l Trade Comm'n*, 787 F.2d 544, 548 (Fed. Cir. 1986)).  We can set aside the Commission's choice of remedy "only if it is legally erroneous, arbitrary and capricious, or constitutes an abuse of discretion."  *Fuji Photo Film Co. v. U.S. Int'l Trade Comm'n*, 386 F.3d 1095, 1106 (Fed. Cir. 2004).

After finding Organik Kimya in default and in violation of § 1337, the Commission determined that a limited exclusion order against Organik Kimya and a cease and desist order against Organik Kimya's U.S. subsidiary were appropriate. *Commission Opinion*, at 21.  Based on the facts in the record, the Commission found 25 years, the length sought by Dow and supported by Dow's expert, to be the proper length for the limited exclusion order and the cease and desist order.  *Id.*  The Commission, however, expressly allowed Organik Kimya to bypass the limited exclusion order and import products using opaque polymers into the United States prior to the completion of the 25-year period as long as Organik Kimya shows the Commission that it has developed its opaque polymers without the use of Dow's misappropriated trade secrets. *Id.* at 23.

On appeal, Organik Kimya does not challenge the cease and desist order; Organik Kimya only challenges the limited exclusion order, alleging that the Commission committed legal error by failing to consider Organik Kimya's arguments regarding the proper remedy, including its challenge to the 25-year term.  The Commission considered Organik Kimya's briefing, however, and determined that its arguments as to the scope of the exclu-

sion order relied entirely on arguments regarding the merits of the trade secret allegations. *Id.* at 19–20. Because Organik Kimya defaulted on those claims due to the discovery sanctions imposed, the Commission determined that Organik Kimya could not relitigate the underlying merits of the trade secret claims by collaterally attacking the merits in its remedy briefing. *Id.* at 20.

The Commission also found Dow's expert credible when he opined that it would take Organik Kimya 15 to 25 years to develop opaque polymers independently. *Id.* at 21. Dow's expert explained the basis for his calculation and supported his opinion with extensive facts from the record. The Commission, in its discretion, found 25 years to be the proper length for the exclusion order, and that decision finds ample support in the record. Given this basis for the Commission's decision, and that Organik Kimya can end the exclusion order period at any time by seeking an advisory opinion or initiating a modification proceeding before the Commission and showing that Organik Kimya has produced opaque polymers independently, we do not find that the Commission abused its discretion or committed legal error in this case.

In an attempt to rebut the Commission's decision to impose a 25-year exclusion order in this case, Organik Kimya points to various cases to support its assertion that exclusion orders in trade secret misappropriation cases typically last five to ten years. As Organik Kimya itself recognizes, however, the Commission bases the time period of a limited exclusion order on a "reasonable research and development period" or an "independent development time" for the trade secrets at issue. *Certain Cast Steel Ry. Wheels, Certain Processes for Mfg. or Relating to Same & Certain Prods. Containing Same*, USITC Inv. No. 337-TA-655, 2009 ITC LEXIS 2387, at *11 (Oct. 29, 2009)). The length of the exclusion order therefore depends on the trade secrets at issue and evidence in the record, not the particular length of exclusion orders in

other cases. *See id.* As discussed above, the record in this case supports the limited exclusion order imposed by the Commission.

Organik Kimya also attempts to find fault with the Commission's citation of 19 U.S.C. § 1337(g). According to Organik Kimya, the Commission relied on § 1337(g), which relates to parties that fail to respond to a complaint, as a basis for refusing to consider Organik Kimya's arguments regarding the proper remedy. The Commission's opinion confutes this argument. The Commission first used § 1337(g) as support for presuming that the allegations of Dow's amended complaint were true based upon Organik Kimya's default. *Commission Opinion*, at 19. This use of § 1337(g) comports with 19 C.F.R. § 210.16(c)(1) and is not legally erroneous. The Commission then used § 1337(g) merely as support for its assertion that Congress has spoken to the existence of remedial orders in default cases. *Commission Opinion*, at 22. These uses of § 1337(g) in the Commission opinion do not amount to legal error; indeed, the Commission does not even use the citations in the manner Organik Kimya claims.

The record in this case supports the Commission's limited exclusion order of 25 years with the opportunity for Organik Kimya to bypass the exclusion order period at any time if it can show that it has developed its opaque polymers without using Dow's misappropriated trade secrets.

### III. CONCLUSION

We have considered Organik Kimya's remaining arguments and find them unpersuasive. For the foregoing reasons, the decision of the Commission is affirmed.

**AFFIRMED**

Costs

Costs to Appellee.